**Thomas Turley APPLE**

v.

**General Thomas GREER, Commanding Officer, United States Army Training Center, Infantry, Fort Dix, New Jersey, et al., Appellants.**

No. 76–1899.

United States Court of Appeals, Third Circuit.

Argued Feb. 24, 1977.

Reassigned March 18, 1977.

Decided April 20, 1977.

Rehearing Denied June 7, 1977.

Richard L. Thornburgh, Asst. Atty. Gen., George W. Calhoun, John F. Barg, Crim. Div. Attys., Dept. of Justice, Washington, D. C., for appellants.

Emerson L. Darnell, Darnell & Scott, Mount Holly, N. J., Jon L. Landau, Central

Committee for Conscientious Objectors, Philadelphia, Pa., for appellee.

Before ADAMS, KALODNER* and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal we must determine whether the district court erred when it granted habeas corpus relief to the appellee, Thomas Turley Apple, while court-martial proceedings were pending against him. Since we conclude that the district court's decision was not congenial with the concept of comity that exists between civilian and military tribunals, we reverse.

### I.

This case had its origins in Apple's unsuccessful efforts to be classified by the Selective Service System as a conscientious objector.

On December 11, 1967, upon the termination of his student deferment from the draft, Apple was classified 1–A (available for service) by his local Selective Service Board. At some point before April 8, 1968, Apple submitted an application for a conscientious objector exemption from military service. The application was denied without explanation, and Apple was continued by the local board in a 1–A status. He then requested a personal appearance before the local board, and made such an appearance on June 10, 1968. The local board again denied the application for conscientious objector status, without stating reasons for its decision. Apple then took an appeal from the decision of the local board to the State

Appeal Board. On October 4, 1968, the State Appeal Board continued Apple in his 1–A classification.

Apple reported for induction into the Army, as ordered, on November 19, 1968, and served in the Army for more than eight months. On July 5, 1969, he left the military without authorization and settled in Canada.

In late 1974, Apple learned for the first time about court decisions which held that a selective service registrant submitting a prima facie claim for conscientious objector status is entitled to reasons for the denial of the application.[1] He decided to return to the United States to present his case, and surrendered at Fort Dix on March 5, 1975. On that same day, Apple commenced his habeas corpus action. He alleged that he is unlawfully detained by the military inasmuch as his induction into the Army was invalid because of the failure of the local board to state reasons for the denial of his conscientious objector application. Military authorities, also on March 5, filed charges against Apple for going AWOL in violation of Article 86 of the Uniform Code of Military Justice.[2]

The district court, on March 10, 1975, issued a temporary restraining order enjoining the court-martial proceedings until the merits of the habeas petition could be determined. An opinion on the merits of Apple's habeas petition was filed by the district court on February 17, 1976. It concluded that Apple had been illegally inducted into the Army, and was being illegally detained. On March 5, 1976, the district court granted the writ. This appeal followed.

Appellants argue that it was improper for the district court, in the context of the

---

* Judge Kalodner participated in the argument and conference in this appeal, but died before the filing of this opinion.

1. These opinions were handed down subsequent to Apple's induction and his unauthorized departure from the military. *See, e. g., Scott v. Commanding Officer,* 431 F.2d 1132 (3d Cir. 1970).

2. 10 U.S.C. § 886 (1970).
 This section provides:

Any member of the armed forces who, without authority—
(1) fails to go to his appointed place of duty at the time prescribed;
(2) goes from that place; or
(3) absents himself or remains absent from his unit, organization, or place or duty at which he is required to be at the time prescribed;
shall be punished as a court-martial may direct.

present case, to intervene in the pending court-martial proceeding.[3] Apple, they maintain, could have secured the relief he seeks—discharge from the Army—within the confines of the military proceedings. In light of such consideration, they conclude, the intervention in this case violated concepts of comity between the civilian and military courts.

Two arguments are made by Apple in support of the action by the district court in enjoining the court-martial proceeding. First, he contends that the federal courts, which are "far more familiar with selective service issues than military courts," should act on the merits of a habeas petition despite a pending court-martial proceeding when the issue presented is the unlawful induction of the petitioner into the Army because the right of the military to try the petitioner is in dispute. Second, Apple insists that it was appropriate for the district court to intervene because the military court could not give the relief requested—honorable discharge from the Army.

## II.

 It has long been recognized that the habeas corpus jurisdiction of the federal courts extends to the claim that a person is being unlawfully detained by the military.[4] However, it has also been acknowledged that the federal courts should ordinarily defer exercising this power, since "The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights."[5] This is an aspect of the comity doctrine,[6] and the question here then is whether, in light of the comity doctrine, the district court properly exercised its jurisdiction.[7]

On a number of occasions the Supreme Court has faced situations in which servicemen requested habeas corpus relief when court-martial proceedings were pending. These decisions form the framework of our analysis in this case.

Our starting point is the Supreme Court's opinion in *Gusik v. Schilder*.[8] *Gusik* was a case where a member of the military sought to invoke the federal court's habeas corpus jurisdiction in order to obtain a collateral review of a judgment of guilty by a court-martial, where it was urged that the court-martial tribunal lacked jurisdiction. The Supreme Court held that a serviceman must exhaust military remedies before a federal

---

3. The appellants also make the following arguments on appeal:
 1. the district court should have required Apple to exhaust administrative remedies within the Army prior to granting habeas relief;
 2. Apple should have been estopped from denying his military status because he improperly tested the validity of his custody by committing a military crime;
 3. habeas corpus relief should have been denied on the ground of laches; and
 4. the record in the district court does not support the finding that Apple had submitted a prima facie claim to the Selective Service Board.
Given our resolution of this case, we need not reach these contentions.

4. *See, e. g., Parisi v. Davidson*, 405 U.S. 34, 39, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *Schlanger v. Seamans*, 401 U.S. 487, 489, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971); *Oestereich v. Selective Service Board*, 393 U.S. 233, 235, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

5. *Burns v. Wilson*, 346 U.S. 137, 143, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

6. The most familiar portion of the comity concept is the principle of federal non-intervention in ongoing state criminal proceedings. *See, e. g., Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

7. If Apple had brought an action seeking habeas corpus relief immediately after his induction into the Army, rather than seeking relief by way of self-help as he did, the district court clearly could have exercised its jurisdiction and granted him relief. Indeed, this was the path followed by the petitioner in the landmark case of *Scott v. Commanding Officer*, 431 F.2d 1132 (3d Cir. 1970), in which we held that a registrant's induction into the Army is invalid if he makes out a prima facie case of conscientious objection and the Selective Service denies, without any explanation, his application for an exemption from the draft.

8. 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950).

court will entertain a habeas petition. It noted that:[9]

> . . . An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. . . .
>
> The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless.

The *Gusik* rule was elaborated on in *Schlesinger v. Councilman.*[10] In *Councilman,* a serviceman sought to enjoin the military authorities from proceeding with a pending court-martial on the ground that the offense with which he was charged was not "service connected" and therefore not within the jurisdiction of the military courts. The Supreme Court held that the same considerations of comity which ordinarily preclude equitable intervention into pending state criminal proceedings, and which require exhaustion of nonfederal remedies before seeking habeas relief also preclude intervention into pending court-martial procedures in most cases.

This principle barred intervention in *Councilman,* since, as the Supreme Court declared, the military courts were as capable as civilian tribunals to determine whether an offense was "service connected." Moreover, if an offense were found to be not "service connected," a court-martial would have to order dismissal of the charges, since it would lack subject matter jurisdiction.[11]

Finally, even in cases such as *Noyd v. Bond,*[12] where federal courts have not been asked to review the merits of the court-martial proceeding but only to determine the legality of a serviceman's confinement during appeal, the Supreme Court has found no justification for civilian judicial intervention when the military system has the power to grant the requested relief.

Apple relies primarily upon *Parisi v. Davidson,*[13] which presented a situation that is facially similar to the one before us. Nine months after his induction into the Army as a draftee, Parisi applied for a discharge as a conscientious objector. Although he had not considered himself to be a conscientious objector prior to his entry into the military, Parisi maintained that prior doubts about the morality of military service subsequently had crystallized. Parisi's application was denied, and after administrative review his application was again rejected. While Parisi's second application was being scrutinized, he declined to obey a military order to board a plane for Vietnam. Court-martial charges were brought against Parisi for refusing to obey the order. Parisi then filed a habeas petition seeking discharge from the Army on the ground that denial of his conscientious objector application was without basis in fact.

Both the district court and the court of appeals held that consideration of the petition had to be deferred until the final determination of the court-martial charge. The Supreme Court reversed, stating that a federal court should stay its hand only if the relief sought by the petitioner "would also be available to him with reasonable promptness and certainty through the machinery

---

9. *Id.* at 131–32, 71 S.Ct. at 151.

10. 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

11. The same conclusion had been reached by this Court in *Sedivy v. Richardson,* 485 F.2d 1115 (3d Cir. 1973).

12. 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 621 (1969).

13. 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972).

of the military judicial system in its processing of the court-martial charge." [14]

The dispositive element in *Parisi,* as the Supreme Court viewed it, was the fact that Parisi could not obtain the relief he sought—discharge from the Army—within the military justice system. Since Parisi's application for discharge as a conscientious objector was premised upon a crystallization of beliefs after he had been inducted lawfully into the military, no jurisdictional problem concerning the right of the military to subject Parisi to its regulations could be presented to the court-martial. At best, Parisi's objection to the denial of his application could be used as an affirmative defense to the military charges and might result in his acquittal. But a military court would have no power to grant him the relief he sought—discharge from the Army as a conscientious objector. [15]

In spite of the surface similarity between the facts of *Parisi* and the present appeal, we believe that *Parisi* is distinguishable, and that this case is consequently governed by the general rule of comity described in *Gusik, Councilman* and *Noyd.* This is so because Apple has a viable remedy in the military court system by which he can achieve the relief he seeks, the crucial factor that was missing in *Parisi.*

If, as Apple asserts and the district court found, he had presented a prima facie claim of conscientious objection to the Selective Service Board, and was given no reason for the denial of his application, his induction order would have been invalid. [16] Apple thus would not lawfully be a member of the armed services and the military courts would have no jurisdiction over him. [17]

But the critical point here is that the claim that there is a lack of jurisdiction can be made to a military tribunal. Under Army Regulations, a "final judicial determination of a military judge, a president of a special court-martial, or military appellate agency that an individual is not currently a member of the Army" will trigger "appropriate action to direct the discharge, release from active military service, or release from military control of the individual concerned." Moreover, the convening authority of a general or special court-martial need not wait for the actual court-martial proceedings to commence in order to make this determination if he reasonably believes that the Army may lack jurisdiction over the individual. Rather, he may choose to "cause a thorough inquiry to be initiated immediately." [18]

**14.** 405 U.S. at 41–42, 92 S.Ct. 815. The requirement that reasonably prompt and certain relief be available in the military tribunals for a federal court to stay its hand is similar to the requirement for federal court deference to pending state court proceedings. *See Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 1854, 43 L.Ed.2d 54 (1975); *State of New Jersey v. Chesimard,* 555 F.2d 63 (3d Cir., filed March 9, 1977).

**15.** *See* 405 U.S. at 42–45, 92 S.Ct. at 815.

**16.** *Scott v. Commanding Officer,* 431 F.2d 1132 (3d Cir. 1970).

**17.** *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

**18.** Army Regulation 635–200, Section V, paragraph 5–12, as amended, provides:

5–12. *Lack of Jurisdiction.* a. The discharge or release of an individual from the Army may be ordered by a U.S. Court or judge thereof. The officer upon whom such an order or writ is served will report it immediately to The Judge Advocate General, as directed in AR 27–40, and will notify the Military Personnel Center, U.S. Army, ATTN: DAPCPAS–SE, 200 Stovall Street, Alexandria, Virginia 22332, who will take appropriate action to direct the discharge, release from active military service, or release from military control of the individual concerned. The notification to *MILPERCEN* will be by electrical message and will consist of a copy of the Advisory Report furnished The Judge Advocate General, in accordance with AR 27–40. Authority for separation (AR 635–200, Para 5–12) will be included in directives or orders directing the individual to report to the appropriate transfer activity or unit personnel section designated to accomplish transfer processing for discharge or release from active duty, as appropriate.

b. Similar notification procedures will be taken upon the final judicial determination of a military judge, a president of a special court-martial, or military appellate agency that an individual is not currently a member of the Army.

c. In those instances where the convening authority of a general of special court-martial

There are a number of cases in which the military courts have found that they lacked jurisdiction because of void enlistments.[19] No reason has been adduced in the record here to indicate that the military authorities would not take all appropriate action in this case. Indeed, at the oral argument, counsel for the government stated that the military courts are utilizing, with increasing frequency, procedures for releasing persons unlawfully inducted into the military.

■ Because the relief requested by Apple appears to be available with reasonable promptness through the military judicial system, the district court should not have acted on the habeas corpus petition until after Apple's claims had been considered by the military. By deferring to the military system, friction between the federal courts and military tribunals can be avoided.[20] In addition, duplicative proceedings may be averted if corrective action is taken with reasonable promptness in the military, thus obviating the need for federal court intervention.[21]

### III.

Although the military judicial system must be the forum with the initial opportunity to pass on the merits of Apple's claim, we are troubled by the fact that although the district court found that Apple was unlawfully inducted, he is nonetheless still detained by the Army. Also, more than two years have now elapsed since the time Apple commenced legal proceedings to obtain discharge from the military. Under these circumstances, we believe that the "reasonable promptness" requirement called for by the Supreme Court in *Parisi* requires an expeditious review by the military of Apple's contentions. If such review is not forthcoming, Apple may renew his petition in the district court without waiting for a final determination by the military.[22]

The order of the district court will be reversed and the case remanded with di-

jurisdiction reasonably believes that the Army may lack jurisdiction, he may, within his discretion, take one of the following alternative actions:

(1) Proceed to court-martial, and if the issue of jurisdiction is presented for consideration, it may be resolved before that forum.

(2) Cause a thorough inquiry to be initiated immediately. All allegations and relevant facts and circumstances giving rise to the claim will be examined, to include inquiry to appropriate recruiting officials, if the claim of lack of jurisdiction is based upon recruiter misconduct. In all cases, the possibility of constructive enlistment will be explored. The provisions of AR 15–6 will not apply to such inquiries.

If the convening authority, based on the results of the inquiry is satisfied that the Army has jurisdiction over the member, he may elect to proceed to trial as outlined in paragraph 5–12c(1), above. In those instances when the convening authority concludes that the Army appears to lack jurisdiction over the soldier, he will submit the report of investigation, together with his recommendations, through his chain of command to the Military Personnel Center for a final determination whether the person is a member of the Army.

Release, retention, or discharge action will be determined solely by Department of the Army; however, disposition of alleged violations of the Uniform Code of Military Justice is within the sole discretion of the court-martial convening authority.

**19.** See *United States v. Russo,* 50 C.M.R. 650 (1975); *United States v. Brown,* 48 C.M.R. 778 (1974); *United States v. Catlow,* 48 C.M.R. 758 (1974).

**20.** See *Gusik v. Schilder,* 340 U.S. 128, 132, 71 S.Ct. 149, 95 L.Ed. 146 (1950).

**21.** See *Schlesinger v. Councilman,* 420 U.S. 738, 756–57, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

**22.** At oral argument, both counsel stipulated that President Carter's pardon for violators of the Military Selective Service Act does not affect the situation presented in this case. See Presidential Proclamation No. 4483 and Ex. Order No. 11967, 42 Fed.Reg. 4391, 4393 (1977).

rections to proceed in accordance with this opinion.

Each side will bear its own costs.

Before: ADAMS and HUNTER, Circuit Judges.

## OPINION SUR PETITION FOR PANEL REHEARING

In a petition requesting panel rehearing, Apple has urged that the military regulation cited by the Court in support of the proposition that relief appeared to be available with reasonable promptness through the military judicial system was not in effect when the district court accepted jurisdiction in this case. It is true that the version of AR 625–200 5–12 cited in note 18 of the panel oponion did not go into effect until March 14, 1975, nine days after the district court took jurisdiction in the matter. However, an earlier version of this regulation was in effect on March 5, 1975, and that regulation was essentially identical in substance to the later revision. Thus, we adhere to our original conclusion that reasonably prompt relief was available to Apple through the military judicial system.

The petition for panel rehearing will therefore be denied.

## SUR PETITION FOR REHEARING BY ORIGINAL PANEL

The petition for rehearing filed by Appellee, Thomas Turley Apple, in the above entitled case having been submitted to the judges who participated in the decision of this court and no judge who concurred in the decision having asked for rehearing, the petition for rehearing is denied.