**Michael A. MURPHY, Plaintiff,**

v.

**H. Lawrence GARRETT,[1] Secretary of the Navy; A.M. Gray, Commandant of the Marine Corps; W.E. Boomer, Commanding General Marine Corps, 4th Marine Division, Department of the Navy; Colonel Rex M. Williams, Deputy Director of Marine Reserve Support Center, Department of the Navy; Major Dennis Williams, United States Marine Corps Recruiting Center Pittsburgh, Department of the Navy; Richard Cheney, Secretary of Defense, and the United States of America, Defendants.**

**Civ. A. No. 89–1853.**

United States District Court, W.D. Pennsylvania.

Jan. 18, 1990.

---

**1.** H. Lawrence Garrett has replaced William L. Ball as Secretary of the Navy and, accordingly, is hereby substituted as a defendant. Fed.R. Civ.P. 25(d).

Philip A. Ignelzi, Samuel Cordes, Ogg, Jones, DiSimone & Ignelzi, Francis C. Rapp, Jr., Feldstein Grinberg Stein & McKee, Pittsburgh, Pa., for plaintiff.

Amy Reynolds Hay, Asst. U.S. Atty., Pittsburgh, Pa., Lt. Vincent Matanoski, JAGC, USNR, Lt. Ruth Thompson, JAGC, USN, Lt. (j.g.) Kris Henrichsen, JAGC, USNR Law Student Division, Office of the Judge Advocate Gen., Dept. of Navy, General Litigation Div., Alexandria, Va., for defendants.

## OPINION

DIAMOND, District Judge.

Michael A. Murphy commenced this action against the Secretary of the Navy and various other defendants on August 31, 1989. On that day, Murphy also sought a temporary restraining order enjoining the defendants from ordering him to active duty in the military for the purpose of appearing before an investigation, pursuant to Article 32 of the Uniform Code of Military Justice ("U.C.M.J."), into court martial charges pending against him. *See* 10 U.S.C. § 832. We issued a temporary restraining order and scheduled a hearing on Murphy's motion for a preliminary injunction for September 8, 1989. At the conclusion of that hearing, we ordered further briefing focusing particularly on jurisdictional issues. We also ordered the parties to submit stipulations of facts.[2] By agreement of counsel, the temporary restraining order was ordered to remain in effect through the disposition of the motion for preliminary injunction. Plaintiff filed his amended complaint on September 25, 1989.

The court has reviewed the briefs and supplemental briefs filed by the parties, as well as the proposed stipulations and responses thereto. For the reasons set forth in this opinion, we will dissolve the temporary restraining order, deny the motion for a preliminary injunction, and dismiss the complaint.

### I. *Background*

Murphy presently holds a commission as a Captain in the reserve component of the

---

**2.** On October 10, 1989, after being informed that the parties were unable to agree to stipulated facts, we ordered Murphy to file proposed stipulated facts, defendants to respond to his proposals and to submit their own, and Murphy to then respond to the defendants' counter-proposals. The facts set forth in this opinion are based upon the parties' stipulations and the uncontroverted facts as set forth in the parties' briefs.

United States Marine Corps. On August 30, 1989, Lieutenant Gerald Pritsch of the Marine Corps informed Murphy that court martial charges were pending against him.[3] Orders calling Murphy to active duty effective September 5, 1989, were sent to his residence in Pittsburgh, Pennsylvania. He then filed the present suit. All of the charges which form the basis of the court martial proceedings against Murphy arise from alleged conduct which occurred in this district, except for one charge which arises from alleged conduct in Cincinnati, Ohio.

While on active duty in the regular Marine Corps, Murphy served as the Operations Officer at the Pittsburgh Recruiting Station from June, 1985, until August, 1986. In August of 1986, Murphy commenced law studies at the University of Pittsburgh School of Law under the Marine Corps Funded Law Education Program ("FLEP"); he graduated in May of 1989.

During his first year of law school, Murphy requested permission to withdraw from the FLEP and to be assigned to his former post. His request was granted and he served as Executive Officer of the Pittsburgh Recruiting Station from June, 1987, until May of 1988. On May 30, 1988, Murphy was discharged from the regular Marine Corps and accepted his present commission as a Captain in the Marine Corps Reserve and was assigned to inactive duty.[4]

Murphy was transferred from the Selective Reserve to the Individual Ready Reserve on April 12, 1989. He was, therefore, detached from his Pittsburgh reserve unit and assigned to the Marine Corps Reserve Support Center in Overland Park, Kansas. On August 23, 1989, Major General W.E. Boomer, Commanding General of the 4th Marine Division, appointed Major S.L. Murray of the Marine Corps Air Station in New River, North Carolina, to conduct an Article 32 investigation into preferred court martial charges pending against Murphy. *See* 10 U.S.C. § 832. On August 30, 1989, as discussed above, Lieutenant Pritsch informed Murphy of the pending charges. Murphy presently is domiciled in this district.

## II. *Discussion*

### A. *Habeas Corpus Jurisdiction*

■ A petitioner may challenge the legal authority under which he is detained or under which his freedom is restricted by a writ of habeas corpus. Indeed, any challenge to a fact or condition of confinement seeking an order which would provide for a prisoner's release is properly treated as a habeas case. *Monk v. Secretary of Navy*, 793 F.2d 364 (D.C.Cir.1986); *Johnson v. Hardy*, 601 F.2d 172 (5th Cir.1979). *Monk*, which involved a challenge to a Marine Corps court martial, held that:

> In adopting the federal habeas corpus statute, Congress determined that habeas corpus is the appropriate federal remedy for a prisoner who claims that he is "in custody in violation of the Constitution ... of the United States" ... This specific determination must override the general terms of the declaratory judgment and federal question statutes.

793 F.2d at 366. *Monk* then held that the action was filed in the wrong district since the petitioner's custodian was not within the jurisdiction of the court. The court also rejected petitioner's argument that the Secretary of the Navy was his "custodian"

---

3. The charges concern Murphy's attending law school at the University of Pittsburgh while he was an active duty member of the regular Marine Corps stationed at the Pittsburgh Recruiting Station. The facts of the charges are not relevant to the issues presently before this court and we, therefore, need not discuss them at length here.

4. The parties were not able to reach a stipulation regarding the events of May 30, 1988. There is no dispute, however, that on that date Murphy was discharged from service as a regular duty officer and was commissioned as a reserve officer. The parties appear, rather, to disagree as to the legal effect of the occurrences of that date (i.e., whether his release from active duty service in the regular Marine Corps constituted a discharge from all service obligation or whether his discharge was conditioned upon his acceptance of the reserve commission). It is enough for present purposes, however, that the parties do not dispute that Murphy is presently a Captain in the reserves and that his regular duty service ended on the same day he received his reserve commission.

for habeas purposes. *See also Jarrett v. Resor*, 426 F.2d 213 (9th Cir.1970) (where plaintiff sought declaratory and mandamus relief in order to avoid difficult jurisdictional problems which might arise if styled as a habeas corpus petition, district court properly characterized plaintiff's case as one for habeas corpus and dismissed it for jurisdictional defect).[5]

■ Murphy's action is styled as one seeking declaratory and injunctive relief and damages. Nevertheless, he challenges the authority under which the Marine Corps may order him to active duty for an investigation and restrict his liberty. Such cases are cognizable under the federal habeas corpus statute. *See, e.g., Hammond v. Lenfest*, 398 F.2d 705 (2d Cir.1968); *Santos v. Franklin*, 493 F.Supp. 847 (E.D.Pa. 1980). Furthermore, any declaration or judgment in Murphy's favor would be based upon our holding that his activation was illegal. If Murphy receives such relief, "the additional relief of immediate release" from military custody as an active duty Marine "would follow automatically since, in a second action for a writ of habeas corpus, the prior judgment would have res judicata effect." *Monk*, 793 F.2d at 366. Thus, we hold that the appropriate remedy is habeas corpus and Murphy's complaint should be treated accordingly.[6]

Under 28 U.S.C. § 2241(c)(1), a person held in custody by the United States may seek habeas relief. The statute, in pertinent part, provides:

(a) Writs of habeas corpus may be granted by ... the district courts ... within their respective jurisdictions....

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof ...

.   .   .   .   .

28 U.S.C. § 2241. The Court of Appeals for the Third Circuit has recognized that "it is well settled that habeas relief ordinarily is available to a person who claims he is being unlawfully detained by the [military]." *Bowman v. Wilson*, 672 F.2d 1145, 1156 (3d Cir.1982).

■ In analyzing a habeas petition:

... the court is confronted with a threshold question whether the petitioner is "in custody" for purposes of establishing the subject matter jurisdiction of the court.

*Meck v. Commanding Officer*, 452 F.2d 758, 760 (3d Cir.1971). Petitioners who are "unlawfully detained, restrained, or confined in the service," *Meck*, 452 F.2d at 760, meet this requirement. *See, e.g., Schlanger v. Seamans*, 401 U.S. 487, 489, 91 S.Ct. 995, 997, 28 L.Ed.2d 251 (1971). Courts have held, and we agree, that reservists ordered to active duty meet this test.

For example, in *Hammond v. Lenfest*, 398 F.2d 705, 710–712 (2d Cir.1968), the Second Circuit held that a reservist ordered to report for active duty is "in custody" for habeas purposes notwithstanding the fact that he had not reported for duty and was under no physical restraint. The court recognized the flexibility of the writ "to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." 398 F.2d at 711, quoting *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Thus, the restraint on the petitioner's liberty by the military's assertion of authority over him was sufficient to satisfy the custody requirement without his having first to report for active duty.

Similarly, *Santos v. Franklin*, 493 F.Supp. 847, 851 (E.D.Pa.1980), held that "[t]he activation of petitioner from the ready reserve to active military service satisfies the jurisdictional requirement of 'cus-

---

**5.** *But see, Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Monk,* 793 F.2d at 367 (holding that it is not habeas if the plaintiffs seek an injunction enjoining prospective enforcement of prison regulations which does not challenge the underlying validity of their confinement).

**6.** Murphy orally moved, at the September 8 hearing, to amend his complaint so as to include a claim for habeas relief. The amended complaint which was filed on September 25, 1989, seeks such relief.

tody'." The late Judge Weber of this court reached the same conclusion in *Hayes v. Secretary of the Army*, 465 F.Supp. 646, 647 (W.D.Pa.1979). Judge Weber held that the petitioners, active duty servicemen stationed in Oklahoma on holiday leave in this district, were in custody here, emphasizing "that the change in classification from reserve to active status occurred when the Petitioners were within the District on the basis of conduct which occurred here." Thus, "it was within this District that the increased restraints of active duty were first imposed." *Id.* Murphy's situation is the same; he has been ordered into active duty "on the basis of conduct which occurred here." Furthermore, he has been present within this district at all relevant times. Thus, he is in custody here.

More difficult than the custody question, however, is the second threshold question of whether this court has jurisdiction to issue this writ. Because writs of habeas corpus must issue within the courts' "respective jurisdictions," we must consider two issues, "whether there existed jurisdiction over the person of the petitioner and whether there existed jurisdiction over the person of petitioner's custodian." *Meck*, 452 F.2d at 761. *See, Braden v. Judicial Circuit of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (§ 2241 requires that the court issuing the writ have jurisdiction over the prisoner's custodian). There is no debate that Murphy is within this court's jurisdiction. The answer to the second issue, whether this court has jurisdiction over his custodian in order to issue the writ, turns on Murphy's military status.

In *Schlanger v. Seamans*, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971), the Supreme Court held that the "custodian" of a serviceman on active duty in the Air Force in Arizona was his commanding officer. *Schlanger*, 401 U.S. at 490–91, 91 S.Ct. at 997–98. *Schlanger* was an active duty member of the Air Force who had been given leave to attend university classes in Arizona. At all relevant times, however, Schlanger's commanding officer in Georgia remained the person within the military who had control over him. Since the commanding officer was located out-

side the territorial jurisdiction of the Arizona district court, the Supreme Court held that "the absence of [petitioner's] custodian is fatal to the jurisdiction of the [district court]." 401 U.S. at 491, 91 S.Ct. at 998. The defendants cite *Schlanger* for the proposition that this court has no jurisdiction because it has no jurisdiction over petitioner's custodian, Colonel Williams of the Marine Corps Reserve Support Center.

More on point with the instant case, however, is the Supreme Court's decision in *Straight v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). *Straight* involved an inactive reservist, like Murphy, who sought discharge from the Army because he claimed to be a conscientious objector. *Straight*, distinguishing *Schlanger*, rejected the conclusion that the petitioner's nominal custodian, who was the commanding officer in charge of all inactive reservists in Ft. Benjamin Harrison, Indiana, must be within the territorial jurisdiction of the court for the writ to issue.

The Court held that the jurisdictional defect in *Schlanger* was not only the absence of Schlanger's commander from the jurisdiction but also "the total lack of formal contacts between Schlanger and the military in that district." *Straight*, 406 U.S. at 344, 92 S.Ct. at 1695. In contrast, *Straight's* nominal custodian had "enlisted the aid and directed the activities of armed forces personnel in California in his dealings with Straight. Indeed, ... virtually every face-to-face contact between him and the military has taken place in California." *Id.* To hold that Straight's custodian is amenable to process only in the district in which "the Army chooses to locate its recordkeeping center ... would be to exalt fiction over reality." *Id.* at 344, 92 S.Ct. at 1695, citing with approval *Arlen v. Laird*, 451 F.2d 684, 687 (2d Cir.1971) (which held that "the only contacts the servicemen had had with his commanding officer were through the officers he dealt with in New York. Those contacts ... were sufficient to give the commanding officer 'presence' in New York."). Thus, the Supreme Court held that "Straight's commanding officer is 'present' in California through the officers

in the hierarchy of the command who processed this serviceman's application for discharge." 406 U.S. at 345, 92 S.Ct. at 1695, citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The rationale for the Court's holding in *Straight* relies, in part, on the distinction between the commanding officer of a Reserve Center, such as Colonel Williams, and a commanding officer in the regular Armed Forces. As stated by the Second Circuit:

the commanding officer of the Center is the head of a basically administrative organization that merely keeps the records of unattached reservists. To give the commanding officer of the Center "custody" of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for *habeas corpus* purposes only within one small geographical area is to ignore reality.

*Arlen v. Laird,* 451 F.2d at 687. Such a holding would force all reservists to file suit in the district where their records merely happened to be kept. The court refused to require such a result. *Accord, Eisel v. Secretary of the Army,* 477 F.2d 1251, 1256 (D.C.Cir.1973); *Lantz v. Seamans,* 504 F.2d 423 (2d Cir.1974) (per curiam).

■ The reasoning that has led the courts above to conclude that the commanders of inactive reserve support centers may be present within a jurisdiction through the actions of other military officers compels us to reach the same conclusion here. The orders calling Murphy to active duty were delivered to his residence within this district and he was informed of

the charges against him by an officer who contacted him in this district. *Lantz,* 504 F.2d at 424. Indeed, the military initially sought to have a Captain Fort, who is within this district, inform Murphy of the charges. Murphy's regular military service, out of which the call to active duty and the court martial charges arise, was performed substantially within this district. *Hayes,* 465 F.Supp. at 648. Murphy received his commission in the reserves while in Pittsburgh and Murphy's original reserve command was within this district prior to his transfer to the inactive reserves and the assignment of his records to the Reserve Support Center. Murphy's attendance at law school while in FLEP was in Pittsburgh, and Murphy's final year of active duty after resignation from FLEP was in Pittsburgh. Thus, this court concludes that petitioner's custodian, Colonel Williams,[7] is "present" within this jurisdiction for purposes of a habeas corpus petition challenging Murphy's call to active duty. *Straight,* 406 U.S. at 344–345, 92 S.Ct. at 1695–1696; *Arlen v. Laird,* 451 F.2d at 687; *Hayes v. Secretary of the Army,* 465 F.Supp. at 647; *Eisel v. Secretary of the Army,* 477 F.2d at 1256; *Lantz v. Seamans,* 504 F.2d at 424.

**B.** *Jurisdiction of Suit Seeking Injunctive Relief*

■ As set forth above, this court concludes that this action should be treated as a petition for a writ of habeas corpus, over which we have jurisdiction. Alternatively, however, we conclude that we have jurisdiction under 28 U.S.C. §§ 1331 and 2201 to entertain an action arising under the Constitution by Murphy which seeks injunctive declaratory relief only for violations of his right to procedural due process.[8]

---

**7.** The parties dispute who is Murphy's immediate custodian. Murphy relies on a document evidencing his being informed of the charges against him for the proposition that Captain Fort is his commanding officer and immediate custodian for habeas purposes. The appearance of Captain Fort's name on the charge sheet does not convince us that he is Murphy's commanding officer. Colonel Williams, who is in charge of the inactive reservists within the Marine Corps Reserve Support Center and who has the

power to order Murphy to active duty, is most appropriately Murphy's immediate custodian. Even if another officer in Colonel Williams' chain of command proves to be Murphy's immediate commanding officer, we would hold that we have jurisdiction to issue the writ for the reasons set forth above.

**8.** The government has not claimed, and reasonably could not claim, that Murphy lacks standing to bring the instant lawsuit, as the chal-

Our Court of Appeals has held that federal courts have jurisdiction to consider "suits for injunctive relief against the military." *Jorden v. National Guard Bureau,* 799 F.2d 99, 109 (3d Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987). *See also, Dillard v. Brown,* 652 F.2d 316 (3d Cir.1981). The Supreme Court has cited injunctive actions as indicative of the type of relief service members may seek in the civilian courts. *See, e.g., Chappell v. Wallace,* 462 U.S. 296, 304–305, 103 S.Ct. 2362, 2367–2368, 76 L.Ed.2d 586 (1983), citing *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

■ To the extent that Murphy seeks damages from the military, however, we may not entertain such a suit. *Jorden,* 799 F.2d at 108 (reading *Chappell* as "laying down a general rule barring damages actions by military personnel against superior officers for constitutional violations"); *United States v. Stanley,* 483 U.S. 669, 684, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987) (holding that special factors counseling hesitation preclude implications of Bivens type actions by military personnel against military officers whenever the injury arises out of activity "incident to service"). *See also Wilson v. Rackmill,* 878 F.2d 772, 775 (3d Cir.1989) (holding that "[t]here may be special factors counseling hesitation in finding a *Bivens* claim here if appellant has an effective remedy available through habeas corpus"). Thus, while it

seems clear that we cannot entertain a suit for damages, we do have subject matter jurisdiction over Murphy's claims for injunctive and declaratory relief if habeas corpus is not the exclusive form of relief available.

## C. Exhaustion of Military Remedies and Younger v. Harris

■ The court assumes, for the reasons set forth above, that we have subject matter jurisdiction to entertain Murphy's suit either as a petition for a writ of habeas corpus or as an injunctive and declaratory action under the Constitution.[9] Nevertheless, we may not proceed directly to the merits:

> There remains the question of equitable jurisdiction, a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but whether consistently with the principles governing equitable relief the court may exercise its remedial powers.

*Schlesinger v. Councilman,* 420 U.S. 738, 754, 95 S.Ct. 1300, 1311, 43 L.Ed.2d 591, 606 (1975) (footnote omitted). *Schlesinger* refused to permit the issuance of injunctive relief against a pending court martial proceeding by analogy to the doctrine of *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). The Court held that "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his claim in the military court system, the federal district courts

lenged governmental action directly involves Murphy.

**9.** Murphy also argues that we have jurisdiction based upon the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* The APA itself "is not an independent basis for jurisdiction." *Chelsea Community Hospital v. Michigan Blue Cross,* 630 F.2d 1131, 1133 (6th Cir.1980), citing *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Rather, the APA provides a basis for review only if there is a basis for jurisdiction under the general federal question statute, 28 U.S.C. § 1331. Nevertheless, we hold that the APA does not afford Murphy an avenue for relief. As noted below, Murphy has failed to exhaust his military remedies. Thus, he may

not maintain an action under the APA. *See, e.g., Matter of Restland Memorial Park,* 540 F.2d 626, 628 (3d Cir.1976); *Watson v. Arkansas National Guard,* 886 F.2d 1004, 1008 (8th Cir.1989); 5 U.S.C. § 702. Furthermore, Murphy's challenge to the court martial is not a dispute for which "there is no other adequate remedy in a court." 5 U.S.C. § 704. Murphy may seek habeas corpus or injunctive and declaratory relief in the federal courts. Furthermore, he may obtain relief in the military courts. Therefore, we hold that the APA does not provide Murphy with an alternative basis for relief since relief is already available in the federal and military court systems.

must refrain from intervention, by way of injunction or otherwise." 420 U.S. at 758, 95 S.Ct. at 1313. *See also Apple v. Greer*, 554 F.2d 105, 109 (3d Cir.1977) (reversing district court's grant of habeas corpus relief in part because "the claim that there is a lack of jurisdiction can be made to a military tribunal"). Similarly, civilian courts long have held that members of the military must exhaust military remedies before seeking relief. *See, e.g., Bowman v. Wilson*, 672 F.2d 1145, 1157 (3d Cir.1982); *Sedivy v. Richardson*, 485 F.2d 1115, 1119 (3d Cir.1973), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1559, 43 L.Ed.2d 774 (1975); *Wickham v. Hall*, 706 F.2d 713, 715 (5th Cir. 1983); *Gusik v. Schilder*, 340 U.S. 128, 131–132, 71 S.Ct. 149, 151–152, 95 L.Ed. 146 (1950). For the reasons below, we conclude that the instant suit "is barred by the twin doctrines of exhaustion of military remedies and the doctrine of *Younger v. Harris*." *Bowman*, 672 F.2d at 1156.

■ It is beyond dispute that if Murphy is a "serviceman," he may not petition this court for a writ of habeas corpus or seek injunctive relief before the military courts have ruled, unless some exception to the exhaustion or *Younger* doctrines applies. *Schlesinger*, 420 U.S. at 758–759, 95 S.Ct. at 1313–1314; *Bowman*, 672 F.2d at 1157; *Apple v. Greer*, 554 F.2d at 109. These rules apply even if a service member challenges the jurisdiction of the military over an offense or over an individual. *See, e.g., Apple*, 554 F.2d at 109; *Sedivy*, 485 F.2d at 1121. Furthermore, courts have held that the rule requiring exhaustion of military remedies applies to reservists who are ordered to active duty, such as Murphy. *See, e.g., Seepe v. Department of the Navy*, 518 F.2d 760 (6th Cir.1975); *Woodrick v. Hungerford*, 800 F.2d 1413, 1417 (5th Cir.1986), *cert. denied*, 481 U.S. 1036, 107 S.Ct. 1972, 95 L.Ed.2d 812 (1987). Murphy, upon being ordered to active duty, filed suit in this court seeking a temporary restraining order. He did not seek to avail himself of relief in the military by seeking, for example, extraordinary relief in the Court of Military Appeals pursuant to the All–Writs Act. 28 U.S.C. § 1651; *Gale v. United States*, 17 U.S.C.M.A. 40, 37 C.M.R. 304

(1967); *Unger v. Ziemniak*, 27 M.J. 349 (C.M.A.1989); *Navy Marine Corps Court of Military Review v. Carlucci*, 26 M.J. 328 (C.M.A.1988); *United States v. Cole*, 24 M.J. 18, 27 (C.M.A.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987) (Cox, J., concurring). Nor did Murphy appear before the Article 32 investigation to contest jurisdiction. Thus, Murphy has not exhausted his military remedies.

Of course, if Murphy were a civilian who had "no relationship of any kind with the military," *United States ex rel. Toth v. Quarrels*, 350 U.S. 11, 13, 76 S.Ct. 1, 3, 100 L.Ed. 8, 12 (1955), and was raising a constitutional challenge to the exercise of military jurisdiction over him, he would not be required to exhaust military remedies nor would the doctrine of *Younger* apply to bar federal court intervention. *Id.; Schlesinger*, 420 U.S. at 759, 95 S.Ct. at 1313; *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). In such cases, it is "especially unfair to require exhaustion ... when the complainants raised substantial arguments denying the right of the military to try them at all." *Noyd v. Bond*, 395 U.S. 683, 696 n. 8, 89 S.Ct. 1876, 1884 n. 8, 23 L.Ed.2d 631, 644 n. 8 (1969). The constitutional questions in those cases "turned on the status of the persons as to whom the military asserted its power." *Schlesinger*, 420 U.S. at 759, 95 S.Ct. at 1314. Likewise, the test for whether one is amenable to court martial jurisdiction "is one of *status*, namely, whether the accused in the court-martial proceeding is a person who can be regarded as falling within the term 'land and naval forces,'" *Solorio v. United States*, 483 U.S. 435, 439, 107 S.Ct. 2924, 2927, 97 L.Ed.2d 364, 371 (1987), *quoting Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 240–241, 80 S.Ct. 297, 300–301, 4 L.Ed.2d 268 (1960). Murphy claims that his status as reservist does not render him amenable to court martial jurisdiction for alleged crimes committed while in the status of active duty regular, regardless of the recent amendments to the U.C.M.J. codified at 10 U.S.C. §§ 802(d), 803(d). Thus, Murphy claims that, like *Toth*, he need not exhaust military reme-

dies because the military has no jurisdiction over him.

The question of "status" is a difficult one here. *Toth* involved an ex-serviceman who "had severed all relationship with the military and its institutions," 350 U.S. at 14, 76 S.Ct. at 4. *Reid v. Covert* involved civilians who were court martialed for the murders of their servicemen husbands. These cases clearly involved civilians; thus, exhaustion was unwarranted. Murphy's case is more difficult because his status is that of a reservist.[10] While the question is a close one, we rely on the cases applying the exhaustion and *Younger* doctrines as well as the policies supporting the doctrines and hold that a reservist such as Murphy may not seek to enjoin a pending court martial and must exhaust military remedies prior to obtaining relief in the civilian courts.

First, as noted above, courts have held that reservists must exhaust military remedies, even when challenging a call to active duty. *Seepe,* 518 F.2d 760; *Woodrick,* 800 F.2d at 1417. This result is in accord with the principle that a citizen-soldier is not a "full-fledged civilian." *Wickham v. Hall,* 706 F.2d 713, 718 (5th Cir.1983), quoting *Wheeler v. Reynolds,* 164 F.Supp. 951, 955 (N.D.Fla.1958). Unlike the petitioner in *Toth,* a civilian ex-soldier "who had severed all relationship with the military," 350 U.S. at 14, 76 S.Ct. at 4, Murphy's "status as a Captain never lapsed." *United States v. Poole,* 20 M.J. 598, 600 (N.M.C.M.R.1985). Murphy is, and was, a member of the armed forces. *See,* 10 U.S.C. § 261(a)(4). Only the character of his membership, from active regular to inactive reserve, has changed. Thus, Murphy is a member of the armed forces challenging the propriety of the military's exercise of court martial jurisdiction. While his challenge may be

meritorious, we feel that it is better decided in the military courts in the first instance. *See, e.g., Apple v. Greer,* 554 F.2d at 109.

Second, while Murphy does challenge the constitutionality of the military's purported exercise of court martial jurisdiction over him in the instant case, he is nevertheless one who properly may be subject to military jurisdiction in certain circumstances. For example, if Murphy were called to active duty, he would be subject to military jurisdiction. 10 U.S.C. § 802(a)(1). Furthermore, Murphy may be subject to court martial for fraudulently obtaining his discharge. *Wickham v. Hall,* 706 F.2d at 713; *United States v. Cole,* 24 M.J. 18 (C.M.A.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Unlike the petitioners in *Toth* and *Reid v. Covert,* who were not amenable to military jurisdiction for any purposes, in certain circumstances Murphy must answer to the military authorities.

Third, the harm attendant to requiring a reservist to exhaust military remedies is not as great as that of a civilian in a similar situation. Reservists like Murphy are aware that the military may exercise some control over their lives. *See, e.g.,* 10 U.S.C. § 673. Full-fledged civilians, on the other hand, have a legitimate expectation that the military will exercise no control over them. Furthermore, unlike the previous disfavor with which the federal courts viewed courts martial, *see, e.g., Lee v. Madigan,* 358 U.S. 228, 232–233, 79 S.Ct. 276, 279–280, 3 L.Ed.2d 260 (1959); *O'Callahan v. Parker,* 395 U.S. 258, 268, 89 S.Ct. 1683, 1688, 23 L.Ed.2d 291 (1969), *ovr'ld, Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), modern jurisprudence recognizes that courts martial are required to, and do, protect the constitutional rights of those appearing before

---

10. In his opinion reserving judgment in *Kinsella v. Krueger,* 351 U.S. 470, 76 S.Ct. 886, 100 L.Ed. 1342 (1956), *ovr'ld, Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), Justice Frankfurter stated that "the Constitution 'clearly distinguishes the military from the civil class as separate communities' and 'recognizes no third class which is part civil and part military—military for a particular purpose or in a particular situation, and civil for all other purposes and in

all other situations …,' Winthrop, Military Law and Precedents (2d ed. 1896), 145." *Kinsella,* 351 U.S. at 481–482, 76 S.Ct. at 892–893. What makes this case difficult is that Justice Frankfurter's dictum does not apply to the modern reservist. Reservists are indeed part civil and part military. We must then decide, with the dual status of reservists in mind, whether they are more like civilians or more like service personnel for exhaustion purposes.

them. *Wickham,* 706 F.2d at 717. The present military justice system contains the "critical element of ... the Court of Military Appeals consisting of civilian judges" free from military influence, *Schlesinger,* 420 U.S. at 757, 95 S.Ct. at 1312, as well as the possibility of certiorari review of Court of Military Appeals decisions by the Supreme Court. 10 U.S.C. § 867(h)(1). Indeed, courts martial often face claims, such as Murphy's, that no military jurisdiction exists. They have upheld such claims and dismissed the charges in appropriate cases, and we have no doubt that they will act fairly in the instant case. *See, e.g., United States v. Poole,* 20 M.J. 598 (N.M.C.M.R. 1985); *United States v. Caputo,* 18 M.J. 259 (C.M.A.1984). These considerations apply here in which the plaintiff is an officer in the reserves. Therefore, we hold that the military courts are competent to pass on Murphy's jurisdictional arguments and should do so first.

Our holding is in accord with the principles underlying the twin doctrines of exhaustion of military remedies and *Younger.* In deciding that a serviceman must exhaust military remedies, the Supreme Court relied upon the policy supporting exhaustion of state remedies before federal habeas relief is available:

> If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military is saved.

*Gusik v. Schilder,* 340 U.S. 128, 131–132, 71 S.Ct. 149, 151–152, 95 L.Ed. 146 (1950); *Bowman,* 672 F.2d at 1157.

These considerations are particularly appropriate in this case. Were we to reach the merits of Murphy's claims, "we would be obligated to interpret extremely technical provisions of the Uniform Code which have no analogs in civilian jurisprudence, and which have not even been fully explored by the Court of Military Appeals

itself." *Noyd v. Bond,* 395 U.S. 683, 696, 89 S.Ct. 1876, 1884, 23 L.Ed.2d 631, 644 (holding that federal habeas review of a prisoner's confinement pending final review of his court-martial is unavailable when the Court of Military Appeals could entertain a petition for a writ of habeas corpus). We deal here with a recent Congressional act expanding military court jurisdiction and military regulations promulgated to implement the act. We have not found, nor have the parties cited to us, any published decisions construing the statutes and regulations before us. Furthermore, the resolution of whether there is jurisdiction may depend in part upon whether Murphy's discharge was conditioned upon his acceptance of a reserve commission or whether he fraudulently obtained his discharge. *See, e.g., Wickham,* 706 F.2d at 718. As in *Noyd,* "[t]here seems little reason to blaze a trail on unfamiliar ground when the highest military court stands ready to consider petitioner's arguments." 395 U.S. at 696, 89 S.Ct. at 1884. *Compare, Taylor v. United States,* 711 F.2d 1199, 1206 n. 8 (3d Cir.1983) (refusing to require exhaustion because the question was purely a legal one and because there was no opportunity for the plaintiff to present his claims to the military prior to his delivery to Spanish authorities).

Were we to hold that a reservist called to active duty under § 802(d) need not exhaust military remedies, all activations under the statute would very likely end up in the district courts. In the recent amendments to the U.C.M.J. at issue here, Congress has expressed the importance of extending military jurisdiction over reservists, as well as the increasing importance of the reserves to the total military force. *See, e.g.,* H.R.Rep. No. 99–718, pp. 225–227, U.S.Code Cong. & Admin.News 1986, 6413. Murphy himself admits that the amendments were passed with a view toward the greater role the modern reserves have in our national defense. Memorandum in Support of Motion for Temporary Restraining Order, p. 6. It seems unwise now to encourage reservists to litigate challenges to military jurisdiction initially in the federal district courts. Given the expertise of

military courts regarding matters such as the status of reserve and other military members, and regarding military jurisdiction, *see, e.g., Schlesinger*, 420 U.S. at 760, 95 S.Ct. at 1314, resort to those courts in the first instance is particularly warranted. We see no need to intrude at this early stage, particulary because timely review of the statute by the Court of Military Appeals may well result in construction of it in Murphy's favor.

We also are convinced that Murphy has failed to establish "extraordinary circumstances" compelling us to disregard the federal equity rule barring intervention into pending court martial proceedings. *Bowman*, 672 F.2d at 1157. Extraordinary circumstances were present in cases involving *"civilians* who contended that Congress had no constitutional power to subject them to the jurisdiction of courts-martial." *Schlesinger*, 420 U.S. at 759, 95 S.Ct. at 1313 (emphasis in original). As discussed above, however, Murphy is a Captain in the reserves and thus subject to military authority and the jurisdiction of courts martial for some limited purposes. In such a case a military court may consider the issue of its own jurisdiction. *See Apple v. Greer, supra; Wickham v. Hall, supra.*

This court, like the court in *Noyd*, is also unpersuaded by Murphy's arguments that we should consider his claims because of the inconvenience of raising them in the military courts. In *Noyd*, the prisoner was confined far from Washington, D.C., where the Court of Military Appeals is located. Nevertheless, the Supreme Court held that his confinement, and the resulting incon-venience and difficulty of petitioning the Court of Military Appeals, was "not enough, standing alone, to permit him to circumvent the military court system." 395 U.S. at 697, 89 S.Ct. at 1884. Furthermore, Murphy may present his jurisdictional arguments at the Article 32 investigation. 10 U.S.C. § 832(b). The court also notes that Murphy would be transported to the investigation and then back to Pittsburgh for only three days and at the military's expense. He would be compensated with full military wages and benefits for his time spent on active duty. While we are aware of the possible slight inconvenience to Murphy of appearing before the investigation, he has failed to demonstrate "extraordinary circumstances."

For the foregoing reasons, and since construction of §§ 802(d) and 803(d) by the Court of Military Appeals may render moot Murphy's challenges to the statutes' constitutionality, we hold that "the twin doctrines of exhaustion of military remedies and the doctrine of *Younger*," *Bowman*, 672 F.2d at 1156, preclude us from enjoining the court martial or entertaining Murphy's petition prior to his asserting his claims in the military courts.[11]

Our holding is supported by the opinion by the United States Court of Appeals for the Fifth Circuit in *Wickham v. Hall*, 706 F.2d 713 (5th Cir.1983). *Wickham* upheld Article 3(b) of the Uniform Code of Military Justice, codified at 10 U.S.C. § 803(b). That section subjects to court martial jurisdiction those individuals who are charged with fraudulently procuring their discharges.[12] *Wickham* reached the merits of

---

**11.** We also note that courts previously had required exercises of military jurisdiction to pass the final prong of the test in *Toth v. Quarrels*, that the power of Congress to authorize court martial jurisdiction must be limited to *"the least possible power adequate to the end proposed."* 350 U.S. at 23, 76 S.Ct. at 8 (citation omitted). *See, e.g., Wickham*, 706 F.2d at 716. Recently, however, the Supreme Court seems to have limited "this dictum" in *Toth* to its factual context— the question of whether an exserviceman may be tried for prior offenses. *Solorio v. United States*, 483 U.S. 435, 440 n. 3, 107 S.Ct. 2924, 2927 n. 3, 97 L.Ed.2d 364 (1987).

**12.** The government has cited § 803(b) as an alternative basis for the exercise of court martial jurisdiction over Murphy. Defendants' Supplemental Brief, pp. 26–27. The charges against Murphy, however, do not include one for fraudulently obtaining a discharge. Furthermore, he was called to active duty pursuant to § 802(d). In contrast, the Army charged Wickham with fraudulently obtaining a discharge and had officially "revoked the order which discharged [Wickham] from active duty." 706 F.2d at 715. No such order appears on the record of this case. Thus, while the military may be able to rely on § 803(b) at some point to obtain juris-

the petitioner's challenge to Article 3(b), but first held that Wickham, a reservist, must exhaust her military remedies. The court noted "[i]t is basic to military claims that the petitioner must exhaust her military remedies before seeking federal court intervention." 706 F.2d at 715, *citing Schlesinger*, 420 U.S. at 758, 95 S.Ct. at 1313; *Gusik v. Schilder*, 340 U.S. 128, 131–132, 71 S.Ct. 149, 151–152, 95 L.Ed. 146 (1950); and *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir.1980). The court held, however, that the claim was exhausted, notwithstanding the court martial's failure to hear the case on the merits, because Wickham had filed an "injunctive action challenging military jurisdiction" in the military court system. 706 F.2d at 715. Murphy, a reservist like Wickham, has failed to similarly exhaust his claims.

The central issue in *Wickham* was "[w]ho should decide whether she fraudulently procured her discharge, a civil or a military court?" 706 F.2d at 717. Wickham had contended that "she is a civilian until her discharge is proven to be fraudulently procured." *Id.* She argued that it is unfair to require resolution of that question in the military courts. The court disagreed.

First, military courts "assume the same responsibility to protect a person's constitutional rights as state and federal courts. *Burns v. Wilson*, 346 U.S. 137, 142 [73 S.Ct. 1045, 1048, 97 L.Ed. 1508] (1953)." *Wickham*, 706 F.2d at 717. Thus, there was no inherent harm in requiring a military tribunal to pass on her claims first. Furthermore, the court held that resolution of Wickham's case "depends in large part upon army regulations and procedures. Such matters fall within the special expertise of the military courts." *Id.* at 717–718,

*citing Schlesinger.* The court also held that the writ of habeas corpus was available for collateral attack on any military court judgment which violated Wickham's rights. *Id.* The federal courts, through the writ, could correct any erroneous decision by the military courts holding that they have jurisdiction.[13]

These considerations apply with equal force to Murphy's case. As noted above, the military courts have the same duty to protect his constitutional rights as in *Wickham*. Should they fail to do so, federal habeas review similarly remains available to him.[14]

Finally, and perhaps most significantly for our purposes, the court noted:

> Wickham, upon obtaining her discharge, was not totally released but instead was transferred from Active Duty to a Reserve component. She did not become a "full fledged" civilian. *Wheeler v. Reynolds*, 164 F.Supp. 951, 955 (N.D.Fla.1958). Since, even if her discharge from active duty was valid, Wickham remained in a Ready Reserve duty status for the remainder of her contract enlistment period, her status would not equate with that of a civilian. If it should be determined that the fraud-in-discharge issue is one that must constitutionally go to a civil court, we would nevertheless hold that Article 3(b) of the UCMJ is valid as applied to Wickham in this case *since she remained a member of an armed forces reserve component.*

*Id.* at 718 (footnote omitted and emphasis added). Thus, as an alternative basis for its holding that *Wickham* may not prevail in an action seeking to enjoin court martial proceedings, the court relied on the fact

---

diction over Murphy, in the instant suit the military has relied solely upon § 802(d).

**13.** *Wickham* also held that the determination by the military court of whether it has jurisdiction in a fraudulent discharge case is "precisely like that which must be made by a district court when it is called on to decide the merits of a claim in order to determine whether federal jurisdiction exists." *Id.* at 718, *citing United States v. United Mine Workers of America*, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91

L.Ed. 884 (1947). Thus, requiring her to raise the issues first in the military court did not constitute a presumption of guilt.

**14.** We do not intimate any views regarding which district court would have habeas jurisdiction in the event that Murphy is unsuccessful before the military courts. The resolution of that question, of course, would depend on facts not before this court and, at any rate, our views would be mere dicta.

that as a member of the reserves, she was not a full-fledged civilian. Murphy, like Wickham, became a member of a reserve component immediately following his period of regular service.[15] His membership in the reserves makes the military's exercise of jurisdiction, at least to determine jurisdiction, less intrusive than if he were a civilian.

We reiterate that the federal courts remain open to Murphy should the military rule adversely to him. We stress also that our holding is, of course, limited to the peculiar facts of the instant suit. If the military sought to exercise jurisdiction over a civilian our result would be different. Furthermore, if the military had no colorable authority whatsoever upon which to rely for the assertion of jurisdiction, we may have ruled otherwise. Finally, if Murphy faced harm greater than that of presentation of his claims to the Court of Military Appeals or to the Article 32 investigation authority, while on paid duty and at government expense, we would consider excusing exhaustion. On the facts of this case, however, we hold that exhaustion is required and that *Younger* bars our intervention.

---

**15.** The fact that Wickham was transferred to the reserves to fulfill her service requirements does not distinguish the cases. Wickham's orders terminating her active duty service and transferring her to the reserves were the equivalent of Murphy's discharge for the purposes of terminating court martial jurisdiction prior to the amendments to the U.C.M.J. at issue here. *See, e.g., United States v. Caputo,* 18 M.J. 259, 266 (C.M.A.1984). Thus, it was Wickham's membership in the reserves which distinguished her from "full fledged" civilians. Murphy's situation is the same.