UNITED STATES

v.

**Stephen A. POOLE, 247 82 0552, Captain (0–3), U.S. Marine Corps Reserve.**

NMCM 84 3897.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 5 July 1984.

Decided 22 March 1985.

LCDR Frederick N. Ottie, JAGC, USN, Appellate Defense Counsel.

LT Daniel Lippman, JAGC, USNR, Appellate Defense Counsel.

CAPT David B. Stratton, USMC, Appellate Government Counsel.

Before GLADIS, Senior Judge, and COUGHLIN and CASSEL, Judges.

PER CURIAM:

Tried by general court-martial constituted of military judge alone on 3 and 5 July 1984, appellant, contrary to his pleas, was found guilty of two specifications of wrongful appropriation and one specification of larceny, one specification of unlawful entry, and two specifications of breaking restriction in violation of, respectively, Articles 121, 130, and 134 of the Uniform

Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 930, 934. The appellant was sentenced to forfeit $1000.00 pay per month for 2 months, and to be dismissed from the service. The convening authority approved the findings and sentence as adjudged.

Appellant attacks the in personam jurisdiction of the general court-martial with the following assignment of error:

PURSUANT TO THE MANDATE OF *UNITED STATES V. CAPUTO*, 18 M.J. 259 (C.M.A.1984), THE CASE AT BAR SHOULD BE DISMISSED.

In *United States v. Caputo, supra,* the Court of Military Appeals found personal jurisdiction to be lacking over a naval reservist who had been charged, while on inactive duty for training, with a drug offense and an unauthorized absence allegedly committed during a prior two week period of active duty for training from which he had been detached without attachment of court-martial jurisdiction. The Court based its decision on paragraph 11*a* of the *Manual for Courts-Martial, 1969 (Rev.)* (MCM):

The general rule is that court-martial jurisdiction over commissioned officers, cadets, midshipmen, warrant officers, enlisted members and other persons subject to the code ceases on discharge from the service or other termination of that status *and that jurisdiction as to an offense committed during a period of service or status thus terminated is not revived by reentry into the military service or return into such a status.*

*Caputo,* at 266 (Original emphasis)(quoting paragraph 11*a*, MCM.)

The Court explained that while Caputo at the time of the alleged offenses was in a status which under the UCMJ subjected him to military jurisdiction, *see* Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1), "[t]hat status was terminated by his release from active duty for training." Although Caputo was arguably again in a status which subjected him to court-martial jurisdiction when he was charged during his subsequent period of inactive duty for training (Article 2(a)(3), UCMJ), the Court held that

"the hiatus that occurred in [Caputo's] status of being subject to the Code" placed him within the ambit of the above emphasized portion of paragraph 11*a* and thus "preclud[ed] trial by court-martial." *Caputo,* at 266. After ensuring that none of the exceptions to the "general rule" of 11*a*, listed by paragraph 11*b*, MCM, applied, the Court dismissed the charges.

■ The facts relevant to the jurisdictional issue in the case at bar are virtually indistinguishable from the facts upon which the Court based its decision in *Caputo.* The offenses in Charges I and II in the instant case were allegedly committed by the appellant between 24 June 1979 and 15 February 1984, while he was on active duty and thus a member of that general class of persons subject to military jurisdiction under Article 2 of the UCMJ. On 15 February 1984, upon the expiration of his obligated term of service, the appellant was released from active duty with an honorable discharge and was thus no longer amenable to court-martial jurisdiction. Approximately 3 months later, from 12 May 1984 to 26 May 1984, the appellant participated in active duty for training (ACDU-TRA) at Camp Lejeune, North Carolina. It is during this subsequent period of active duty that the appellant was placed on administrative disciplinary status for the purpose of standing trial for the offenses alleged in Charges I and II. (The offenses of breaking restriction alleged in Additional Charge I and Additional Charge II were committed during this latter period of active duty.)

Thus, as in *Caputo,* the Government attempted to revive its jurisdiction over offenses committed during a prior period of service, such jurisdiction having been terminated by appellant's release from active duty, through the appellant's reentry into the status of a person subject to the Code.

The Government claims that the instant case can be distinguished from *Caputo.* It argues that:

the appellant's commission as a reserve Captain amplified his military status and

that status as a commissioned officer never lapsed;

the fact that appellant joined the Ready Reserve the day *before* his release from active duty demonstrated that, despite his honorable discharge, he never returned to *full* civilian status; and

the offenses in the instant case were committed just before the appellant's release from active duty and there is, therefore, no evidence of government negligence which, the government claims, helped influence the Court's decision in *Caputo.*

We find these factual distinctions cited by the government to be inapposite to the jurisdictional issue and to the decisional basis for the Court's holding in *Caputo.*

▆▆▆ Although it is true that, pursuant to the Ready Reserve Service Agreement he signed on 14 February 1984, the appellant, even after he was released from active duty, never relinquished his commission as an officer, it is not this "status" or lack of status as an "officer" (or as a cadet, midshipman, warrant officer, or enlisted member as listed in paragraph 11*a,* MCM) which is determinative of whether or not court-martial jurisdiction over the person exists. Rather, it is the *"status* as a person belonging to the general category of persons subject to the code" [1] as defined by Article 2(a) of the UCMJ [2] which is dispositive of the jurisdictional issue. Thus, a

person can be a commissioned officer, or enlisted member, etc., in the armed forces without being subject to the jurisdiction of the Uniform Code of Military Justice. Examples of this would be an officer in the Marine Corps Ready Reserve or an enlisted man in the Naval Reserve who, while retaining their respective ranks in their respective services, are not at a particular moment subject to court-martial jurisdiction because they have not been called or ordered to duty or training pursuant to Article 2(a)(1), and/or are not on inactive duty training pursuant to Article 2(a)(3). Thus, while the Government is correct in stating that the appellant's status as a Captain never lapsed, that observation is irrelevant with respect to whether or not the appellant's "status as a person belonging to the general category of persons subject to the code" lapsed. (*See* paragraph 11 *b,* MCM). Nor does the Government's observation distinguish the instant case factually from *Caputo.* Caputo's release from ACDUTRA during the time he allegedly violated the UCMJ did not cause his status as a Ship's Storekeeper Third Class in the Naval Reserve to lapse. It did cause a hiatus, however, in his status of being subject to the code—a hiatus which was sufficient, according to the Court's interpretation of paragraph 11*b,* to preclude him from being tried for those offenses during any subsequent period when he would

---

1. Paragraph 11*b, Manual for Courts-Martial, 1969 (Rev.)* (Emphasis added).

2. Article 2(a), Uniform Code of Military Justice, 10 U.S.C. § 802:

The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

(2) Cadets, aviation cadets, midshipmen.

(3) Members of a reserve component while they are on inactive duty training authorized by

written orders which are voluntarily accepted by them and which specify that they are subject to this chapter.

(4) Retired members of a regular component of the armed forces who are entitled to pay.

(5) Retired members of a reserve component who are receiving hospitalization from an armed force.

(6) Members of the Fleet Reserve and Fleet Marine Corps Reserve.

(7) Persons in custody of the armed forces serving a sentence imposed by a court-martial.

(8) Members of the Environmental Science Services Administration, Public Health Service, and other organizations, when assigned to and serving with the armed forces.

(9) Prisoners of war in custody of the armed forces.

(10) In time of war, persons serving with or accompanying an armed force in the field....

again be "in a status which under the Code subjected him to military jurisdiction." *Caputo*, at 266.

Furthermore, while a commissioned officer's status may require him to adhere to higher standards of conduct and to be measured by stricter standards than that of an enlisted man, those high standards in no way make the officer more or less a part of the military or more or less subject to its jurisdiction. The exercise of military jurisdiction is based upon a person's belonging to one of the categories delineated in Article 2(a) of the UCMJ (*see* note 2 *supra*), not by his rank or position within any of those categories. Thus, the Government's argument that the appellant's military status was "amplified" by his commission is an untenable one.

The Government's argument that, because he joined the Ready Reserve the day before his release from active duty, the appellant never returned to "full civilian status," is likewise a misinterpretation of the term "status." Whether a person's status can be said to be that of a "full citizen," like one who has never been a part of or who has severed all ties with the military, or that of a "citizen-soldier," like Cincinnatus of ancient Rome or the modern day reservist, that person's amenability to military jurisdiction is defined solely by Article 2 of the Code and its exceptions and not by that person's status as such.

■ Furthermore, the fact that the Ready Reserve Agreement was signed a day prior to the appellant's discharge did not affect the fact that appellant's release from active duty terminated his amenability to court-martial jurisdiction. Nor does the early signing of that agreement place the instant case within the rule of *United States v. Clardy*, 13 M.J. 308 (C.M.A.1982). That case held that court-martial jurisdiction does exist to try a servicemember for an offense occurring during his prior enlistment *if he was discharged solely for the purpose of reenlistment and his military status remained uninterrupted*. In the instant case, the appellant was released from active duty only after completing his

obligatory period of service. *Clardy* did "not question that ... military jurisdiction is terminated by a discharge *at the end* of an enlistment or period of obligated term of service even though the servicemember immediately reenters the service." *Clardy, supra*, at 316. (Original emphasis).

The alleged commission of the offenses just before the appellant's release from active duty does not obviate the fact of cessation of court-martial jurisdiction over the appellant on 15 February 1984, the day he received his discharge from active service. Court-martial jurisdiction can be exercised over a servicemember even after the expiration date of his term of service if there is "commencement of action with a view to trial." Paragraph 11*d*, MCM. Under certain circumstances, investigative actions can fulfill the requirements of paragraph 11*d*. *United States v. Self*, 13 M.J. 132 (C.M.A.1982) Thus, the fact that a servicemember's release from active duty is imminent does not free him to commit crimes with impunity as the government suggests. Additionally, we make no determination here with respect to whether or not there was any "government negligence" in this case. Nor did the *Caputo* decision have anything to do with the presence of or lack of Government negligence. The decisional basis for that case, and the premise upon which we base our decision in the instant case, is the general rule of paragraph 11*a*, MCM.

Pursuant to that rule and to *United States v. Caputo, supra*, we set aside the findings of guilty of Specifications 3, 4, and 5 of Charge I and of Charge I, and of Charge II and the specification thereunder, as the court-martial lacked jurisdiction over the appellant with respect to those charges. Those charges and specifications are dismissed. We affirm the findings of guilty of Additional Charge II and Additional Charge III, finding that the offenses of which the appellant was found guilty under those charges were committed while the appellant was on active duty and that military jurisdiction did attach prior to appellant's release therefrom. Upon reassess-

ment only so much of the sentence as provides for forfeitures of $200.00 per month for two months is affirmed.