Michael A. MURPHY, Captain, U.S. Marine Corps Reserve, Petitioner,

v.

H. Lawrence GARRETT, Secretary of the Navy; Alfred M. Gray, General, Commandant, United States Marine Corps; W.E. Boomer, Major General, Commanding General, Fourth Marine Division, Respondents.

Misc. Docket No. 90-04.

U.S. Court of Military Appeals.

Feb. 20, 1990.

As Revised Feb. 23, 1990.

As Amended on Grant of Reconsideration March 15, 1990.

For Petitioner: *Samuel J. Cordes* (argued).

For Respondents: *Lieutenant J. Richard Chema, J.A.G.C., U.S.N.* (argued); *Commander Thomas W. Osborne, J.A.G.C., U.S.N.* and *Lieutenant Colonel Joseph S. Uberman, U.S.M.C.* (on brief).

*Opinion of the Court*

COX, Judge:

This matter came on to be heard by this Court on February 15, 1990, as a result of an Order of this Court of February 9, 1990, temporarily staying "any order that petitioner report for active duty ... for a period of time not to exceed 10 days or until further order of the Court." The order further directed the respondents "to show cause, if any there be, why petitioner should not be represented by appellate defense counsel and why ... [the] stay order should not be made permanent." Thus, we consider whether respondents should be enjoined permanently from ordering petitioner to active duty for the purpose of participating in an investigation ordered pursuant to the provisions of Article 32, Uniform Code of Military Justice, 10 USC § 832. Jurisdiction for this Court to act is asserted pursuant to the All Writs Act, 28 USC § 1651(a).

Prior to initiation of the present action in this Court, petitioner sought injunctive relief in the United States District Court for the Western District of Pennsylvania,

which relief was denied on January 18, 1990, on the ground that he had failed to exhaust his remedies under the Uniform Code of Military Justice. Unpub. op. of Dist. Ct. at 25. He subsequently appealed this denial to the United States Court of Appeals for the Third Circuit, which denied his claim for relief on February 6, 1990. Justice Brennan, as Circuit Justice, denied a stay on February 9, 1990.

For the reasons hereinafter stated, we dissolve the temporary restraining order and deny the petition for extraordinary relief, which was filed along with the motion for a temporary stay and sought dismissal of the charges for lack of jurisdiction.

Viewing the factual matters before us in the light most favorable to petitioner's claim for relief, we conclude that the following facts are relevant to the disposition of this claim:

1. That petitioner served on active duty as a member of the United States Marine Corps from April 13, 1981, to May 30, 1988.

2. That on May 30, 1988, he received an Honorable Discharge from the United States Marine Corps and was simultaneously commissioned as a reserve officer and transferred to the Marine Corps Reserve pursuant to his own request. He had no further obligated service in the United States Marine Corps Reserve.

3. That on August 23, 1989, and again on February 7, 1990, charges were preferred against petitioner alleging violations of various Articles of the Uniform Code of Military Justice for misconduct before May 30, 1988. Among the various charges preferred against him is an allegation that he obtained his discharge by fraud, in violation of Article 83, UCMJ, 10 USC § 883.

a. The charges arise out of petitioner's participation in a funded legal education program provided by the Marine Corps and his conduct in procuring his release from the obligations of that program. Charges likewise arise out of and relate to petitioner's continued attendance in law school while regularly assigned other duties as a recruiting officer in Pittsburg, Pennsylvania.

b. All charges and specifications preferred against petitioner directly or indirectly relate to his performance of duties while an active-duty commissioned officer in the United States Marine Corps.

4. That after May 30, 1988, petitioner has participated in inactive-duty training with the Marine Corps Reserve, but none of the alleged misconduct occurred during a "period of inactive duty training."

5. That petitioner has been ordered to active duty pursuant to appropriate service regulations by Major General W. E. Boomer, Commanding General, Fourth Marine Division, a general court-martial convening authority in the regular component, United States Marine Corps.

■ The narrow questions that we now decide are whether the United States Marine Corps can invoke jurisdiction over petitioner to require him to report for active duty to participate in the formal Article 32 Investigation of the charges and whether, by implication, he can be ordered to active duty to stand trial by court-martial, should the charges be referred to trial.

The pertinent statutory law concerning this case is Article 2 of the Uniform Code of Military Justice, 10 USC § 802. That Article provides in pertinent part:

§ 802. Art. 2. Persons subject to this chapter

\* \* \* \* \* \*

(d)(1) A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 815 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of—

(A) investigation under section 832 of this title (article 32);

(B) trial by court martial; or

(C) nonjudicial punishment under section 815 of this title (article 15).

(2) A *member of a reserve component* may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was

(A) *on active duty;* or

(B) on inactive-duty training, but in the case of members of the Army National Guard of the United States or the Air National Guard of the United States only when in Federal service.

(3) Authority to order a member to active duty under paragraph (1) shall be exercised under regulations prescribed by the President.

(4) A member may be ordered to active duty under paragraph (1) only by a person empowered to convene general courts-martial in a regular component of the armed forces.

(5) A member ordered to active duty under paragraph (1), unless the order to active duty was approved by the Secretary concerned, may not—

(A) be sentenced to confinement; or

(B) be required to serve a punishment consisting of any restriction on liberty during a period other than a period of inactive-duty training or active duty (other than active duty ordered under paragraph (1)).

(Emphasis added.)

■ We are called upon to determine whether the term "active duty" within Article 2(d)(2)(A) is narrowly limited to those periods of active duty while the member is in the reserve component or whether the term "active duty" includes all periods of the member's active duty regardless whether the member is in the regular component or the reserve component at the time of the alleged offenses. *Compare United States v. Overton,* 24 MJ 309 (CMA), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987), *with United States v. Caputo,* 18 MJ 259 (CMA 1984).

We conclude that the term "active duty" should be given its plain and ordinary meaning. *Cf. Pearson v. Bloss,* 28 MJ 376, 378–79 (CMA 1989). The relevant question is whether the offenses allegedly occurred while the member was either (1) on active duty or (2) on inactive-duty training.

Assuming that the United States Marine Corps has complied with appropriate service regulations pertaining to the order to active duty, a member of the reserve component may be ordered active duty for the purpose of an investigation under Article 32 of the Uniform Code or for a court-martial. The fact that his regular service was terminated by the issuance of an Honorable Discharge and that his reserve service commences upon the simultaneous issuance of a new commission does not divest his armed force of jurisdiction.

Petitioner has asked us to consider the constitutional limitations of trying him by court-martial. Because of his continuing active contacts with the United States Marine Corps through regular periods of inactive-duty training and the nature of the charges against him, we need not address this issue. Likewise, we do not decide the constitutional question whether a member of the inactive reserve who has *no contacts* with an armed force could be ordered to active duty. *Cf. United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

Respondents have urged us to consider as an alternative basis for jurisdiction the fact that charges have been preferred against petitioner for fraudulently procuring his discharge, in violation of Article 83 of the Code. *See United States v. Cole,* 24 MJ 18 (CMA), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Wickham v. Hall,* 12 MJ 145 (CMA 1981). Article 3(b) of the Uniform Code of Military Justice provides:

(b) Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is, subject to section 843 of this title (article 43), subject to trial by court-martial on that charge and is after apprehension subject to this chapter while in the custody of the armed forces for that trial. Upon conviction of that charge he is subject to trial by court-martial for all

offenses under this chapter committed before the fraudulent discharge.

We decline to rule upon this alternative ground because we have concluded that jurisdiction is firmly rooted in petitioner's reserve status under Article 2(d), UCMJ, 10 USC § 802(d).

The temporary stay provided for in the order of February 16, 1990, is hereby dissolved, and the petition for extraordinary relief dated February 8, 1990, is hereby denied.

EVERETT, Chief Judge, and SULLIVAN, Judge (concurring):

In *United States v. Caputo*, 18 MJ 259 (CMA 1984), this Court held that, under existing statutory provisions, a reservist who had been released from a 2 week tour of duty during which he allegedly had violated the Uniform Code of Military Justice could not thereafter be called to duty for purposes of court-martial. *See also Duncan v. Usher*, 23 MJ 29 (CMA 1986). Congress was dissatisfied with the results in these cases and decided to amend the Uniform Code. The language Congress employed to do so—which is set forth in the majority opinion—appears to go beyond the situation presented by *Caputo* and to include the situation of petitioner Murphy. However, the terms Congress used—such as "active duty"—have well-established meanings in military law; and we conclude that Congress intended for those terms to be given their plain and ordinary meaning. *Cf. Pearson v. Bloss*, 28 MJ 376, 378–79 (CMA 1989).

The exercise of military jurisdiction over petitioner may be inconsistent with the result reached in *United States ex rel. Hirsh-berg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949); *but cf. United States v. Clardy*, 13 MJ 308 (CMA 1982). However, *Hirshberg* was predicated on the statutes in effect at that time and the established interpretation of those statutes. Congress was free to change the result reached in *Hirshberg;* and we conclude that it did so. Indeed, such a change would seem to accord fully with the purpose which motivated the legislative overruling of *Caputo*—namely, to avoid jurisdictional gaps resulting in crime without punishment.

Insofar as constitutional considerations are concerned, *see United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), this is not the case of a former servicemember who has totally severed his connection with the military establishment and thereafter is being prosecuted by military authorities for crimes committed while on active duty. Indeed, it is not the case of a person who, after leaving active duty, has remained in the inactive reserve but has not participated in military drills or training. As petitioner's counsel conceded during oral argument before this Court, Murphy has participated in military drills a dozen or more times since he resigned his regular commission as a Marine Officer and accepted a reserve commission. Apparently he received military retirement points by reason of this participation; and he may have received military pay as well. In view of petitioner's extensive continuing contacts with the Marine Corps, we are convinced that subjecting him to military jurisdiction is constitutional. *Cf. United States v. Overton*, 24 MJ 309 (CMA 1987).