

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-1996

# Murphy v. Dalton

Precedential or Non-Precedential:

Docket 95-3183

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Murphy v. Dalton" (1996). *1996 Decisions.* Paper 194.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/194

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-3183

_____

MICHAEL A. MURPHY,

Appellant,

v.

JOHN H. DALTON, Secretary of the Navy; GENERAL
CARL E. MUNDY JR., Commandant of the Marine Corps;
MAJOR GENERAL ALBERT C. HARVEY, Commanding General,
4th Marine Division; COLONEL JERRY L. CREED, Deputy
Director, Marine Reserve Support Center, MAJOR DENNIS WILLIAMS,
U.S. MARINE CORPS RECRUITING CENTER PITTSBURGH; BRIGADIER
GENERAL JACK W. KLIMP, Commanding General, Marine
Corps Recruit Depot, Parris Island, Individually and in his
official capacity; WILLIAM J. PERRY,
Secretary of Defense; and the UNITED STATES OF AMERICA,

Appellees.

_____

Appeal From the United States District Court
for the Western District of Pennsylvania
(D. C. Civ. No. 90-cv-00357)

_____

Argued November 28, 1995

Before: MANSMANN, COWEN and SEITZ, Circuit Judges.

Filed: April 11, 1996

_____

Andrew G. Sykes, Esq. (argued)
Sammuel J. Cordes, Esq.
Ogg, Jones, Desimone & Ignelsi, L.L.P.
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

    Attorneys for Appellant

Frederick W. Thieman
United States Attorney
Paul J. Brysh (argued)
Assistant U.S. Attorney
633 U.S. P.O. and Courthouse
Pittsburgh, PA 15219

Lt. Susan C. Stewart, JAGC, USN
Department of the Navy
200 Stovall Street
Alexandria, VA 22332

   Attorneys for Appellees

_____

**OPINION OF THE COURT**
_____

**SEITZ**, <u>Circuit Judge</u>.

        Michael E. Murphy ("Plaintiff"), formerly a captain in the United States Marine Corps Reserves, initiated an action in the district court challenging, <u>inter</u> <u>alia</u>, the authority of the United States Marine Corps to recall him to active duty, while a member of the Marine Corps Reserves, and to subject him to trial by court-martial for offenses committed during a prior period of active duty in the regular Marines Corps.  Plaintiff appeals an order of the district court granting summary judgment in favor of the Secretary of the Navy John H. Dalton, <u>et</u> <u>al.</u> ("Defendants"). The court held that Plaintiff was lawfully recalled to active duty and court-martialed in accordance with constitutional standards.  The district court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

**I.  FACTS**

         Plaintiff served in the regular component of the United States Marine Corps from October, 1981 to May 30, 1988, and achieved the rank of captain.  On May 30, 1988, he resigned his commission and received an honorable discharge from the regular component.  Simultaneous with his discharge, Plaintiff requested

and accepted a commission as a reserve officer and transferred to the Marine Corps Reserves. Under this arrangement, Plaintiff had no obligated service in the reserves.

In or around August 1988, Plaintiff joined a Marine reserve unit and participated in inactive duty training. Thereafter, charges were preferred against Plaintiff for violations of various articles of the Uniform Code of Military Justice ("UCMJ") for misconduct which occurred during his prior period of active duty in the regular component. Plaintiff was called to active duty to face the charges but challenged the military's jurisdiction over him. At the time of his recall, Plaintiff was not on active duty or on inactive duty training. None of the allegations concerned conduct occurring during the period of Plaintiff's inactive duty training in the reserves.

Before a general court-martial, Plaintiff pleaded guilty to two of five counts against him. The remaining three charges were withdrawn. Plaintiff was fined $75,000, which was suspended, and he was dismissed from the service. He appealed his conviction to the Navy-Marine Court of Military Review which affirmed the conviction. Thereafter, Plaintiff filed a petition for certiorari to the United States Supreme Court which was denied.

After exhausting his military remedies, Plaintiff sought relief in the district court. Plaintiff requested 1) compensatory and punitive damages, including attorneys fees, against Defendants in their individual capacities, for violation of his constitutional rights; 2) compensatory damages under the

Federal Tort Claims Act for the intentional and negligent conduct of the United States officials; 3) declaratory and equitable relief for violation of Plaintiff's constitutional and statutory rights; and 4) "a permanent injunction providing for Plaintiff's reinstatement in the Marine Corp Reserve with restitution of all financial losses and losses of benefits suffered as a result of Defendants' conduct[,] and expungement of his conviction, dismissal[,] and the record of all proceedings conducted without jurisdiction by the Military Courts." (Second Amended Complaint, App. at 22.)

Motions for summary judgment were made by both Plaintiff and Defendants. The district court dismissed Plaintiff's complaint and granted summary judgment for Defendants holding that Plaintiff was lawfully recalled to active duty and court-martialed in accordance with constitutional standards. No opinion was filed. Instead, in support of its ruling, the court adopted Defendants' memoranda of law as its rationale. Plaintiff filed a timely appeal to this Court.

## II. DISCUSSION

This case concerns the fundamental question of whether the military had continuing jurisdiction over Plaintiff to subject him to recall to active duty and subsequent court-martial. Resolution of jurisdictional questions such as this are historically within an Article III court's jurisdiction. See Schlesinger v. Councilman, 420 U.S. 738, 753 n.26 (1975)(citing United States v. Frischholz, 36 C.M.R. 306, 307 (C.M.A. 1966)).

Because we are reviewing the district court's grant of summary judgment, our review is plenary.

### A. Elements of Court-martial Jurisdiction

Generally, court-martial jurisdiction has three elements: (1) the accused must be in a status subject to the UCMJ at the time the offense was committed; (2) personal jurisdiction must attach at the time of the court-martial; and (3) "the accused must be `amenable' to trial by court-martial for the alleged offense." See Earle A. Partington, Court-Martial Jurisdiction Over Weekend Reservists After United States v. Caputo, 37 Naval L. Rev. 183, 194 (1988). Elements two and three are the focus of this appeal.

### 1. The Uniform Code of Military Justice

The UCMJ provides:
(a) The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces . . . and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

. . . .

(3) Members of a reserve component while on inactive-duty . . . .

10 U.S.C. § 802(a)(1) & (3) (1988). Those falling into one of the categories of persons listed above are said to be in a "status subject to the Code." In the present case, there is no

dispute that Plaintiff was in a status subject to the Code at the time of the alleged offenses.

In order to satisfy the second element, i.e., personal jurisdiction, Defendants called Plaintiff into active duty, a status subject to the Code, pursuant to the following statutory authority:

> (1) A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 815 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of--
> (A) investigation under section 832 (article 32) of this title;
> (B) trial by court martial; or
> (C) nonjudicial punishment under section 815 of this title.
>
> (2) A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was--
> (A) on active duty; or
> (B) on inactive duty training . . . .

10 U.S.C. § 802(d)(1) & (2) (1988) (emphasis added). Under this section, Defendants posit that Plaintiff, as a reserve officer, was properly recalled to active duty to face court-martial for the offenses committed while he was a member of the regular component. They contend that § 802(d) "expressly authorizes the recall of reservists for investigation and court-martial with respect to offenses committed on active duty" even if such periods of active duty occurred in the regular component. In Defendants' view, because the term "active duty" is not qualified in any way it should be given its plain meaning and be applicable

to any period of active duty.  Thus, Defendants invoked 10 U.S.C. § 802(d) as the statutory authority for personal jurisdiction over Plaintiff, and, by implication, the authority to order him to stand trial by court-martial.

Contrary to Defendants' position, Plaintiff initially argues that the term "active duty" in § 802(d)(2)(A) refers only to those periods of active duty served while a reservist.  As such, it has no application to situations where the offense was committed while on active duty in the regular component.  The result, Plaintiff argues, is that § 802(d) cannot be used to effect personal jurisdiction.

Additionally, Plaintiff asserts that the third element of court-martial jurisdiction, "amenability" to trial by court-martial, cannot be met.  Plaintiff argues that jurisdiction over him for past offenses committed during his prior period of service was lost after his discharge from the regular component of the Marines.  He asserts that to have continuing jurisdiction over him for such past offenses requires the application of an earlier version of 10 U.S.C. § 803(a), which provided continuing jurisdiction over discharged military personnel when certain conditions were met.[3]  Because § 803(a) could not apply, Plaintiff argues he is not amenable to jurisdiction.

_____

[3] Section 803(a) as applied to Plaintiff provided:

> Subject to section 843 of this title, no person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, punishable by confinement for five years or more and for which the person cannot be tried

Defendants do not rely on the applicability § 803(a). Instead, they argue jurisdiction was never lost over Plaintiff upon his honorable discharge from the regular component because his discharge was handled "simultaneously" with his acceptance of a reserve commission. As such, they assert there was no break in service. We undertake our review beginning with the historical development of modern court-martial jurisdiction.

## 2. The Hirshberg Case

Our analysis of modern court-martial jurisdiction originates with United States ex rel. Hirshberg v. Cooke, 336 U.S. 210 (1949). Hirshberg, a naval enlisted man, while serving a second term of enlistment, was served with charges directing his trial by court-martial. The charges stemmed from misconduct that occurred during his prior term of enlistment. The government alleged court-martial jurisdiction under Article 8 (Second) of the Articles for the Government of the Navy, which provided that "such punishment as a court-martial may adjudge may be inflicted on any person in the Navy . . . guilty of maltreatment of, any person subject to his orders." The government contended that this language authorized the court-martial for Hirshberg's conduct during a prior enlistment because

in the courts of the United States or of a State, a Territory, or the District of Columbia, may be relieved from amenability to trial by court-martial by reason of the termination of that status.

10 U.S.C. § 803(a) (1988), amended by 10 U.S.C. § 803(a) (1992).

Hirshberg was "in the Navy" when the offense was committed and when he was tried. Id. at 212-13.

The government conceded that had Hirshberg not re-enlisted he would not have been subject to court-martial because of his break in service. However, the Court pointed out that making such concession while "urging such a literal construction of article 8 (Second) expose[d] the whimsical and uncertain nature of the distinctions that would mark the boundaries of court-martial powers." Id. at 213. Additionally, the Court reasoned that "[j]urisdiction to punish rarely, if ever, rests upon such illogical and fortuitous contingencies." Id. at 214. Thus, out of Hirshberg came the doctrine that military jurisdiction over an individual for offenses committed during a prior period of enlistment or obligated service lapses after the discharge for that period. Today, "[d]espite the enactment of the Uniform Code of Military Justice and various amendments to the Code, Hirshberg remains binding precedent." United States v. Cortte, 36 M.J. 767, 769 (N.M.C.M.R. 1992)(citing United States v. Clardy, 13 M.J. 308 (C.M.A. 1982)). It is the Hirshberg doctrine that applies throughout this appeal.

3. Plaintiff's Military Obligation

In Defendants' memoranda of law, adopted by the district court as its rationale, it is continually argued that Plaintiff's discharge was "conditioned" upon further military service, to wit, his acceptance of a reserve commission. This was an attempt to show the absence of a complete break in status under the Code. However, this simply is not the case. At the

time Plaintiff entered the Marines, he had a statutory obligation of six years of service. See 10 U.S.C. § 651.  After completion of these six years, Plaintiff had no further military obligation. Consequently, he submitted his resignation, was honorably discharged, and accepted a reserve commission.  Discharge orders were issued to reflect such facts.

If Plaintiff decided not to accept the reserve commission, new orders would have been issued honorably discharging him with no further military obligation. See Letter from Asst. U.S. Attorney Brysh to Third Circuit Court of Appeals 2 (Oct. 19, 1995) (On file with Clerk's office) [hereinafter Brysh Letter].  In a letter from the Commandant of the Marine Corps to Plaintiff regarding Plaintiff's resignation, the Commandant stated:

> Your request for resignation . . . is approved. In response to your request, you have been considered for and are tendered a Marine Corps Reserve commission.
>
> . . . .
>
> . . . Should you not desire the Reserve commission tendered you, the Commandant of the Marine Corps (MMSR-3) must be notified immediately.  These orders are cancelled and new orders will be issued.

Letter from Commandant of the Marine Corps to Captain Michael A. Murphy (April 27, 1988). (App. at 184.)  There is no indication from any source in the record that a decision by Plaintiff not to request the reserve commission would have changed his military obligation.

The following discussion contained in the Navy's Courts-Martial Regulations also supports Plaintiff's position:

> A member of a regular or reserve component remains subject to court-martial jurisdiction after leaving active duty for offenses committed prior to such termination of active duty <u>if the member retains military status in a reserve component without having been discharged from all obligations of military service.</u>
>
> . . . A "complete termination" of military status refers to a discharge relieving the servicemember of any further military service.  It does not include a discharge <u>conditioned</u> upon acceptance of further military service.

Discussion to Rules for Courts-Martial 204(d) (1995) (emphasis added).  Moreover, Plaintiff's Honorable Discharge Certificate contains no conditions to discharge. (App. at 55.)  Lastly, it is indicated in a Memorandum to the Secretary of the Navy that Plaintiff requested a reserve commission which was "Not Obligated." (App. at 60.)  Thus, Plaintiff's military obligation was completely terminated in that his discharge was not conditioned on further military service, i.e., acceptance of a reserve commission.

In an attempt to show continuing jurisdiction over Plaintiff and avoid the application of <u>Hirshberg</u>, Defendants now contend on appeal that because Plaintiff chose to submit his resignation with a request for a reserve commission, his resignation and acceptance of commission as a reserve officer were "handled as a single transaction."  Brysh Letter at 2. Therefore, they argue, there was no lapse in military service and Plaintiff remained subject to court-martial jurisdiction. Defendants have cited no authority to support their position nor has any come to our attention.  Even if we were to assume that

Plaintiff's resignation and acceptance of a reserve commission were handled as a "single transaction," his status under the Code still lapsed upon his honorable discharge from the regular component.

Additionally, Plaintiff's situation is unlike those cases holding that there is no interruption in one's "status subject to the Code" upon an early discharge for the purpose of reenlistment. See, e.g., Clardy, 13 M.J. at 315-16.

Defendants also attach some relevance to the fact that Plaintiff remained a commissioned officer, albeit a reservist. However, this fact is of no consequence. For it is not "status" as a officer which is determinative of court-martial jurisdiction; rather, it is status as a person belonging to the general category of persons subject to the Code. See United States v. Poole, 20 M.J. 598, 600 (N.M.C.M.R. 1985); see also United States v. Spradley, 41 M.J. 827, 830 (N.M.C.C.A 1995) (noting "`subject to recall' is not the same as `subject to the Code'").

It is apparent to this Court that Plaintiff was under no obligation to accept a reserve commission. When discharged, Plaintiff's status as a person subject to the Code "completely terminated" upon his separation from the regular component, notwithstanding his reserve affiliation. Moreover, Plaintiff did not join a reserve unit for more than three months after his discharge from the regular component. This alone evidences a clear break in status under the Code. Accordingly, we hold that at the moment Plaintiff's discharge from the regular component

became effective, his status as a person subject to the Code terminated subject only to a subsequent restoration of that status through possible applicable statutory exceptions.  We turn to that possibility.

### 4.  Title 10 U.S.C. § 803

Title 10 U.S.C. § 803 is entitled "Jurisdiction to try certain personnel."  The section contains exceptions to Hirshberg when military jurisdiction is terminated by a discharge at the end of a period of enlistment or obligated service.  Because of his complete termination in status subject to the Code, Plaintiff argues that to have continuing jurisdiction over him, he must be brought within the application of 10 U.S.C. § 803(a) (1988). See supra note 1.  Before its recent amendment which is not applicable to the present facts, § 803(a) acted as a grant of continuing jurisdiction, notwithstanding a discharge, when the offense committed (1) was punishable by five years or more of confinement, and (2) was not triable in any federal or state court.

It is noteworthy that "[t]he language of [10 U.S.C. §803(a)] was drawn to cover only the most serious offenses and restricted to those instances in which the guilty would otherwise escape trial or punishment in any American courts." United Sates ex rel. Toth v. Quarles, 350 U.S. 11, 27 (1955) (Reed, J., dissenting).  Significantly, we note that § 803(a) was never tendered by Defendants as a basis for jurisdiction.

Plaintiff ultimately was charged with the following violations of the UCMJ: 1) Conspiracy, 2) Fraudulent Separation, 3) Violation or Failure to Obey Lawful General Order or Regulation and Dereliction in Performance of Duties, 4) False Official Statement, and 5) Conduct Unbecoming an Officer and a Gentleman. (See App. at 199-202 (General Court-Martial Order containing charges.)  As part of a plea agreement, Plaintiff pleaded guilty to charges three and five.  The remaining charges were dismissed. Id.  Of the five charges, only two of the five were punishable by confinement for five years, i.e., Fraudulent Separation and False Official Statement. See Part IV of the Manual for Courts-Martial ¶¶ 8(e) & 31(e) and Appendix 12.[4]

The charge for Fraudulent Separation is a separate exception to Hirshberg and forms the basis for jurisdiction under 10 U.S.C. § 803(b).[5]  However, a conviction for such offense is

---

[4]A review of the allegations in Charge I (Conspiracy), appears to indicate that the offense which is the subject of the conspiracy was for the offenses described in Charge III (Violation or Failure to Obey Lawful General Order or Regulation and Dereliction in Performance of Duties). (App. at 199-200.) The maximum punishment for conspiracy is the maximum punishment authorized for the offense which is the object of the conspiracy. See Part IV of the Manual for Courts-Martial ¶ 5(e).  Under our analysis, the charge of conspiracy in this case would carry with it a maximum punishment of two years and six months. (See App. at 70 (Defendants' Response to Plaintiff's First Request for Admissions and Interrogatories).)

[5]Section 803(b) provides:

> Each person discharged from the armed forces
> who is later charged with having fraudulently
> obtained his discharge, is, subject to
> section 843 of this title (article 43),
> subject to trial by court-martial on that
> charge . . . . Upon conviction of that charge
> he is subject to trial by court-martial for

needed under § 803(b) before a servicemember can be tried for other prior offenses.  Hence, we do not feel it appropriate to consider the charge of Fraudulent Separation when reviewing the applicability of § 803(a).[6]

As to the charge of making a false official statement, we find no evidence in the record to show that Plaintiff could not have been tried in another court in the United States for an offense of similar import.  Accordingly, we hold that Plaintiff's case does not fall within the statutory exception of § 803(a).

## B.  Plaintiff's Recall Under § 802(d)

Defendants invoked 10 U.S.C. § 802(d) to achieve personal jurisdiction over Plaintiff and subject him to trial by court-martial.  They contend that § 802(d) "expressly authorizes the recall of reservists for investigation and court-martial with respect to offenses committed on active duty" even if committed in the regular component.  Of course, in Plaintiff's case, this argument must presuppose that there was no break in Plaintiff's

---

all offenses under this chapter committed before the fraudulent discharge.

10 U.S.C. § 803(b) (1988).

[6]It appears that Plaintiff initially was not charged with Fraudulent Separation.  See Murphy v. Garrett, 729 F. Supp. 461, 471 n.12 (W.D. Pa. 1990).  We do not feel compelled to address the applicability of § 803(b) because the record indicates §802(d) was used by Defendants as the basis for jurisdiction over Plaintiff.  More important, the charge for Fraudulent Separation was never adjudicated in the military court but was dismissed as part of the plea agreement.  Thus, if § 803(b) was used to effect jurisdiction over Plaintiff, we would question whether, under the present circumstances, the military had jurisdiction to convict Plaintiff on the two charges to which he ultimately pleaded guilty in that the jurisdictional prerequisite of § 803(b), i.e., a conviction for Fraudulent Separation, was never met.

status under the Code upon his "simultaneous" resignation from the regular component and acceptance of a reserve commission. However, we have rejected this position.

The only other plausible argument for continuing jurisdiction over Plaintiff is that § 802(d) acts as an independent exception to Hirshberg. We note that Defendants have never expressly argued that § 802(d) acts as such an exception. But cf. Murphy v. Garrett, 29 M.J. 469, 472 (C.M.A. 1990) (Everett, C.J., and Sullivan, J., concurring). Instead, Defendants have conceded that had Plaintiff experienced a two-day lapse in time between his discharge and acceptance of the reserve commission, court-martial jurisdiction would have been lost. Obviously, this concession militates against Defendants' position because, as we noted earlier, the Supreme Court expressly stated in Hirshberg that, "jurisdiction to punish rarely, if ever, rests upon such illogical and fortuitous contingencies." Hirshberg, 336 U.S. at 214. Despite our earlier holding that Plaintiff's status under the Code terminated upon his discharge from the regular component, we feel compelled to ask whether § 802(d) is an exception to Hirshberg.

Section 802(d) provides a mechanism for the recall of reservists to active duty when the offense was committed while the member was (A) on active duty; or (B) on inactive duty training. See 10 U.S.C. § 802(d)(1) & (2) (1988). Defendants argue that "active duty" means any period of active duty performed by Plaintiff. We observe that the term "active duty" in § 802(d)(2)(A) can support the argument that Plaintiff is

subject to military jurisdiction for the offenses previously committed while on active duty in the regular component. However, § 802(d)(2)(A), when read in light of the former §803(a), could just as well support the argument that the Marines could not recall Plaintiff for offenses committed prior to his honorable discharge from the regular component unless an exception can be met, i.e., the two requirements of § 803(a). Cf. Hirshberg, 336 U.S. at 261.

In the Court of Military Appeals in this case, the court found that the term "active duty" should be given its plain and ordinary meaning and encompass active duty in both the regular and reserve components. Murphy, 29 M.J. at 470. However, with the exception of Murphy, there is no case law interpreting "active duty" in § 802(d)(2)(A). We recognize that ruling of the military court as persuasive authority, nonetheless, we are not bound by its holdings. Necessarily then, we undertake the task of statutory interpretation.

The Supreme Court has repeatedly stated: "Where . . . the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." Blum v. Stenson, 465 U.S. 886, 896 (1984); see also Deutsch v. United States, 67 F.3d 1080, 1085 (3d Cir. 1995). Contrary to Defendants' position, we find the language of § 802(d) unclear. Hence, we turn to the statute's legislative history.

1. Legislative History of § 802(d)

In 1984, the Court of Military Appeals decided the case of <u>United States v. Caputo</u>, 18 M.J. 259 (C.M.A. 1984). Caputo, a reservist on active duty, was arrested and held by civilian authorities. Weeks later, Caputo reported for his regularly scheduled inactive duty training. He was advised of the charges against him stemming from the earlier incident and ordered into pretrial confinement. Caputo's commanding officer extended Caputo's inactive-duty training status for an indefinite time to facilitate prosecution of the charges and Caputo contested court-martial jurisdiction. <u>Id.</u> at 261.

The Court of Military Appeals held that at the time of the alleged offense, Caputo was in a status which subjected him to military jurisdiction. However, that status was terminated by his release from active duty training, notwithstanding, his subsequent return to inactive-duty training. This "hiatus" of being subject to the Code precluded court-martial jurisdiction unless an exception to the <u>Hirshberg</u> rule applied. <u>Id.</u> at 266. As no exception applied, personal jurisdiction was found to be lacking. The court called on Congress to consider "whether express authority should be granted for the Armed Services to order a reservist to active-duty for purposes of court-martial with respect to an offense that occurred during an earlier period of military service and which falls within the purview of Article 3(a)." <u>Id.</u> at 267-68. Congress responded to the court's suggestion with the enactment of both §§ 802(d) and 803(d).[7]

---

[7] Section 803(d) provides:

The legislative history of §§ 802(d) and 803(d) indicates that the amendments "would conform [the UCMJ] to the military's total-force policy by subjecting members of the reserve components in Federal status to the same disciplinary standards as their regular-component counterparts." H.R. Rep. No. 718, 99th Cong., 2d Sess., at 225 (1986)[hereinafter "H.R. Rep."]. Among other things, the House Report of the legislation indicates:

> The proposed amendments . . . permit the call or order to active duty of a member of the reserve component for the purpose of disciplinary action; and correct the lapse of jurisdiction over an offense committed by a reservist during a period of duty that ends before the offense is discovered.
>
> . . . .
>
> The amendments would also permit the call or order to active duty members of reserve components for investigation under Article 32 [of the UCMJ], for trial by court-martial, or for nonjudicial punishment. Presently, no statutory authority exists to call or order reservists to active duty solely for disciplinary purposes, even when they are otherwise amenable to the jurisdiction of the [UCMJ].
>
> The amendments would further, bridge the jurisdictional gap identified in United States v. Caputo . . . .

---

> A member of a reserve component who is subject to this chapter is not, by virtue of the termination of a period of active duty or inactive-duty training, relieved from amenability to the jurisdiction of this chapter for an offense against this chapter committed during such period of active duty or inactive-duty training.

10 U.S.C. § 803(d) (1992).

H. Rep. at 226-27.

The legislative history of these amendments is quite telling. This history coupled with the language of the amendments leads us to believe that §§ 802(d) and 803(d) were intended to work jointly and enacted in direct response to Caputo to "bridge the jurisdictional gap" presented in that case. The enactment of § 802(d) was to provide a mechanism to call or order reservists to active duty solely for disciplinary purposes in cases such as Caputo in order to satisfy the personal jurisdiction requirement of court-martial jurisdiction. And, the enactment of § 803(d) created one more exception to Hirshberg; this time to act as a continuing grant of jurisdiction over reservists for offenses committed while on active duty "in the reserves," notwithstanding, a termination of such active duty. Nowhere is there evidence of a congressional intent to subject a reservist to court-martial jurisdiction for offenses committed on active duty while in the regular component. More to the fact, the legislative history shows no evidence of an intent to reach beyond the situation faced in Caputo to reach a result inconsistent with Hirshberg.

Curiously, in the Court of Military Appeals in Murphy, the concurrence suggested that while the exercise of military jurisdiction over Plaintiff may be inconsistent with the result reached in Hirshberg, Congress was free to change such result. 29 M.J. at 472 (Everett, C.J., and Sullivan, J., concurring). Apparently, the concurrence believed that Congress had indeed done so. However, the congressional history shows that Congress

did not intend to change the result in <u>Hirshberg</u>.  The House Report on the legislation reads:

> With respect to the proposed amendment of Article 3, the committee intends not to disturb the jurisprudence of <u>United States ex rel. Hirshberg v. Cooke</u>, 336. U.S. 210 (1949).

H. Rep. at 227.

Thus, we hold the term "active duty" in 10 U.S.C. §802(d)(2)(A) refers to those periods of active duty served by a reservist while performing such duty in the reserves.  Moreover, § 802(d) does not act as an independent exception to the <u>Hirshberg</u> doctrine.

### III.  CONCLUSION

The order of the district court will be vacated, and the case remanded for further appropriate proceedings.

———————————————————

Michael A. Murphy v. John H. Dalton et. al., No. 95-3183


MANSMANN, dissenting.

I respectfully dissent because I would hold that the military did, in fact and in law, have continuing jurisdiction over Murphy to subject him to recall to active duty and subsequent court-martial. Consistent with Supreme Court jurisprudence, I find that the circumstances surrounding Murphy's discharge from the regular component of the Marine Corps and his acceptance of a commission in the Marine Corps Reserve did not constitute a true break in service. Assuming arguendo that such a break did occur, however, I would hold that Congress intended, with the enactment of the 1986 amendments to 10 U.S.C. §802 and 10 U.S.C. §803, more specifically 10 U.S.C. §802(d) and 10 U.S.C. §803(d), to integrate the reserve components into the total-force policy of the military by subjecting members of the reserve components to the same disciplinary standards as their regular component counterparts.


I.

Irrespective of whether Murphy did not have further military obligation to the Marine Corps as a matter of law, the fact remains that, as the majority opinion states, he requested and accepted, simultaneously with his discharge, a commission as a reserve officer and transferred to the Marine Corps Reserve. Therefore, consistent with United States ex rel. Hirshberg v. Cooke, 336 U.S. 210 (1949), no actual physical break in service

occurred which would have created a lapse in status during which Murphy was not subject to military jurisdiction. This is consistent with the Supreme Court's holding in Hirshberg that the Navy did not have court-martial jurisdiction over a member of its regular component who was honorably discharged and who re-enlisted the next day for offenses allegedly committed during an initial term of enlistment. The fact that Murphy did not join a reserve unit immediately is not compelling in that he accepted the commission as a reserve officer simultaneously with his discharge from the regular component. Further, although Plaintiff received a DD-214 (Honorable Discharge Certificate), the Uniform Code of Military Justice delineates exceptions to the rule that "delivery of the discharge certificate terminates status." These exceptions include re-enlistment discharges, Article 3(a) offenses[8], and fraudulent discharge.[9] I would first

---

[8]We note that the government does not raise the issue of continuing jurisdiction under §803(a) in its brief as all of the charges to which Murphy pled guilty pursuant to the plea agreement individually carried a period of confinement of less than five years. However, the language of §803(a) specifically addresses those actions with which a "...person [is] charged with having committed...." and not the charges for which a person is ultimately convicted.

[9]        Fraudulent discharge involves the member of the military who obtained the discharge on fraudulent pretenses. It does not appear that the government is relying on this exception in this appeal.

        As noted in the majority opinion, the record is not clear as to whether the charges as originally raised against Murphy contained the charge of Fraudulent Discharge. The General Court Martial-Order dated November 5, 1990 which listed the disposition of all of the charges as ultimately raised against Murphy does contain a charge for alleged false representations and concealment of facts material to separation from the Funded Legal Education Program and subsequent misrepresentations to a

apply the exception for re-enlistment discharges, which refers to the practice of discharging a member of the military at the termination of the period of enlistment or earlier, and then immediately re-enlisting the member.

With respect to the second exception to the Code rule that "delivery of the discharge certificate terminates status" -- Article 3(a) offenses, 10 U.S.C. §803 permits military prosecution if the member of the military is not on active duty status at the time of the court-martial but the alleged offense which occurred prior to the discharge is not actionable in any civilian court and the punishment for the action is incarceration for a period of five or more years. Of the charges raised against Murphy, fraudulent separation and false official statements individually carried a punishment of five or more years confinement. In addition, fraudulent separation is not a charge for which a person may be tried "in the courts of the United States or of a State, a Territory, or the District of Columbia..." pursuant to 10 U.S.C. §803(a).[10] As a result, I would hold that the jurisdictional requirements of §803(a) were met and Murphy was indeed a member of the military subject to the

---

superior which procured a separation from the regular component of the United States Marine Corps.

Pursuant to a plea agreement, Murphy pled guilty to two of the five charges; the remaining three charges, including the charge of fraudulent discharge, were withdrawn by the Government.
[10]The discussion of the charge of fraudulent discharge is limited herein as it applies to the Article 3(a) offenses exception and not as the charge may apply to a basis of jurisdiction under 10 U.S.C. §803(b).

Uniform Code of Military Justice both at the time the alleged offenses were committed and at the time of the court-martial.

Thus, Murphy was eligible to be ordered to active duty status because he did not have a break in service and further because he falls squarely within exceptions to the delivery of the discharge certificate rule.

## II.

Assuming arguendo that Murphy had a break in service between his active duty/regular component status and his reserve officer status, I would still hold that he could be ordered to active duty for trial by court-martial.  Section 802(d)(1) specifically provides that:

> (d)(1)  A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 815 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of --
>
> (A) investigation under section 832 of this title (article 32);
> (B) trial by court-martial; or
> (C) nonjudicial punishment under section 815 of this title (article 15).
>
> (2)  A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was --
> (A) on active duty; or
> (B) on inactive-duty training, but in the case of members of the Army National Guard of the United States or the Air National Guard of the United States only when in Federal service.
> \* \* \*

The plain language of the statute sets forth clearly that Murphy, as "a member of a reserve component" may be ordered to active duty if he committed an offense "while [he] was on active duty."

I cannot find any support in the statute for the majority's holding that the term "active duty" should apply only to periods of active duty while Murphy was a member of the reserve component and not the regular component; the language of the statute does not limit or qualify "active duty" in any manner. Indeed, the legislative history of §802(d) as well as §803(d) indicates that Congress intended to promote a full amalgamation of the reserve component with the regular component by expanding court-martial jurisdiction for the reserve component. It was the intent of Congress, with the enactment of the 1986 amendments to §802 and §803, to update court-martial jurisdiction as it applies to members of the reserve component; ("The provisions of the UCMJ addressing jurisdiction over reservists were drafted more than 35 years ago. At that time, the reserve was viewed as a separate force." H. Rep. 99-718, 99th Cong., 2d Sess. p. 226.) Therefore, it would be inconsistent with the total-force concept to hold that a lapse in court-martial jurisdiction occurs each time a member of the military transfers between components.

Most importantly, the House Report states that "[t]he proposed amendments would . . . permit the call or order to active duty of a member of a reserve component for the purpose of disciplinary action; and correct the lapse of jurisdiction over an offense committed by a reservist during a period of duty that

ends before the offense is discovered." Id. at 226. This was in direct response to the decision of the Court of Military Justice in United States v. Caputo, 18 M.J. 259 (C.M.A. 1984), in which jurisdiction over a reservist was relinquished as he was alleged to have committed offenses against the UCMJ during one period of active duty but the offenses were not discovered or acted upon by the military until a subsequent period of active duty. The Caputo example of "fortuitous circumstances" -- and Murphy's situation -- are the types of instances which Congress sought to address and remedy with the 1986 amendments to the statutes.

We recognize the comment in the House Report that "[w]ith respect to the proposed amendment of Article 3, the committee intends not to disturb the jurisprudence of [Hirshberg]." H. Rep. 99-718, 99th Cong., 2d Sess. p. 227. While the Supreme Court in Hirshberg held that a break in service terminates court-martial jurisdiction over a member of the military, our task is to consider the statutes and amendments of §802 and §803 applicable to Murphy to analyze properly his situation as a present day member of the reserve component. In finding that Murphy was a member of the military subject to the UCMJ both at the time the alleged offenses were committed and at the time he was called to court-martial, we are not disturbing the jurisprudence of Hirshberg because Hirshberg was not subject to Article 3(a) offenses. As the 1986 amendment §803(d) states:

> A member of the reserve component who is
> subject to this chapter is not, by virtue of
> the termination of a period of active duty or
> inactive-duty training, relieved from
> amenability to the jurisdiction of this

chapter for an offense against this chapter committed during such period of active duty or inactive-duty training.

10 U.S.C. §803(d)

Accordingly, I would affirm the decision of the district court.